Plum, Appellant, *v.* Tampax, Inc.

Argued January 14, 1960. Before JONES, C. J., MUS-MANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Michael H. Egnal,* for appellant.

*Henry W. Sawyer, III,* with him *John Markle, Jr.,* and *Drinker, Biddle & Reath,* for appellee.

OPINION BY MR. JUSTICE COHEN, May 4, 1960:

Plaintiff commenced this action by writ of foreign attachment, naming certain garnishees. She then filed a complaint in equity against the defendant for an accounting. By preliminary objections defendant challenged the jurisdiction of the court below to adjudicate the matter, asserting that all of the relief sought by the plaintiff involved the internal affairs of a foreign corporation. The lower court dismissed the complaint, and this appeal under the Act of March 5, 1925, P. L. 23, 12 PS §672, followed.

At the outset we note that the question raised by the defendant on preliminary objections is not properly a question of whether the court has jurisdiction, but one of whether the court should exercise the jurisdiction it has. It is because courts voluntarily choose not to interfere in the internal affairs of a foreign corporation that they decline to hear such cases; it is not because they lack power to do so. *Gulf Oil Corp. v. Gilbert,* 330 U. S. 501 (1947). Accordingly, since the writ of attachment in the instant case was validly executed, there is no question of jurisdiction appealable under the Act of March 5, 1925. *Fairchild Engine & Airplane Corporation v. Bellanca Corporation,* 391 Pa. 177, 137 A. 2d 248 (1958). The proper procedure for plaintiff would have been to take an appeal from the final order of the court below dismissing her complaint.

Rather than dismiss this appeal, however, we shall treat the papers as an appeal from that order.

The following facts emerge from the pleadings: Plaintiff is a resident of Copenhagen, Denmark. The defendant, Tampax, Inc., is a Delaware Corporation with its principal place of business in New York City. The defendant manufactures and distributes Tampax, a catamenial device used for feminine hygienic purposes. On March 15, 1955, in consideration of plaintiff's work in having the sale of Tampax tampons made legal in Scandinavia and for other unspecified reasons, plaintiff and defendant entered into a written agreement which in substance provided that the defendant would transfer to plaintiff 25% of the capital stock of a corporation to be formed for the purpose of doing business in Denmark, Norway and Sweden or, in case the business should be organized in a form other than a corporation, a 25% share of the Scandinavian business formed. In addition plaintiff was to receive 25% of the net profits of the business in Scandinavia, regardless of the form of the enterprise, earned after March 1, 1955. The agreement concluded with the stipulation that any disagreement between the parties over the provisions of the agreement should be settled in accordance with the laws of Denmark and that certain courts in Copenhagen, Denmark, would be competent courts to adjudicate controversies between the parties relating to the agreement.

On or about March 15, 1955, defendant created a Danish corporation known as Tampax, Scandinavia A/S, for the purpose of selling its product in Denmark and Norway, and transferred to the plaintiff a certificate for 25% of the Danish company's outstanding and issued common stock. Later, the defendant restricted the Danish company to sales of its product in Denmark only and designated an independent agency, Midelfart & Company, located in Oslo, Norway, to conduct its

business in Norway. No proportional share of the Norway agency has been given to plaintiff. On or about January 1, 1956, the defendant formed a wholly owned subsidiary to the Danish company known as Tampax, Scandinavian A/B for the purpose of selling its product in Sweden.

The plaintiff alleges that the entire direction, conduct and operation of the Danish and Swedish companies and the Norway agency are under the complete control and supervision of the defendant through its officers and agents in New York. The books and records of these various companies are kept and maintained in the defendant's New York offices; there also the inter-company purchase and sales price of Tampax, the expenditures and all business activity and, in addition, the balance sheets and profits and loss statements of the said companies are made up, supervised, determined and finally approved by defendant's officers and agents.

The plaintiff maintains that defendant has embarked upon and continues a plan and arrangement which seeks to deprive her of her 25% share of the net profits of the Scandinavian business. She alleges that in furtherance of this plan the defendant has caused the Danish and Swedish corporations to pay too high a purchase price for Tampax from its manufacturing subsidiary in England; to set up inconsistent and arbitrary reserves against inventories so as to reduce net profits; to incur abnormally high advertising costs in the management of the Swedish company; and to charge profits earned by the Danish and Swedish companies for the years 1957-1958 with the loss sustained by the Danish company in 1956.

In the prayer of her complaint, plaintiff seeks permission to inspect the books and records of the Danish and Swedish corporations and the Norway agency, all of which are housed in the defendant's New York of-

fices, and to inspect any inter-company agreements in force during the years 1955 through 1958 concerning the sales by the defendant or its manufacturing company in England to the Danish and Swedish companies. In addition she seeks an accounting of the profits earned by the Danish and Swedish companies from the date they began doing business and an order establishing in the plaintiff by appropriate agreements and documents a 25% share of the Norwegian agency.

It is well-settled that Pennsylvania courts will not take jurisdiction for the purpose of regulating or interfering with the internal management or affairs of a foreign corporation. *Kahn v. American Cone & Pretzel Co.,* 365 Pa. 161, 74 A. 2d 160 (1950); *Ferrari v. Level Coal Mining Co., Inc.,* 358 Pa. 44, 55 A. 2d 755 (1947); *Hopkins v. Great Western Fuse Co.,* 343 Pa. 438, 22 A. 2d 717 (1941). Aside from some well defined areas, see Restatement, Conflict of Laws, §§192-202 (1934), whether or not our taking jurisdiction might result in such interference will depend upon the particular facts of the case. *Kahn v. American Cone & Pretzel Co.,* supra. Generally, however, such interference occurs only where the suit is predicated upon rights derived from some status within the corporate association, and where the suit is brought by or against persons in their capacities as shareholders, officers and directors. In the exceptional case where jurisdiction has been refused even though the action was predicated on rights derived from other than the association relationship, the internal affairs of a foreign corporation were inextricably involved.

Such a case was *Mulligan's Estate,* 274 Pa. 398, 118 Atl. 315 (1922), found by the lower court to be "most like" the instant case and therefore controlling. Therein we sustained a lower court's refusal to entertain a claim against the estate based on a guarantee provision in a lease which made the decedent responsible for

payment in the event that the lessee, a foreign corporation, failed to fulfill its obligation. While recognizing that the proceeding was not against the corporation itself but against the estate of one who had guaranteed its undertakings, we said, "the fact remains that the question whether there was mismanagement of the business for which deceased was responsible cannot be considered without a review of the entire management of the company." Id. at 401.

We cannot agree with the lower court that the instant case is governed by *Mulligan's Estate,* or that it falls within the "internal affairs" rule. The crux of plaintiff's claim here is that the defendant corporation, of which plaintiff is not a shareholder, has, pursuant to an ordered scheme, purposely manipulated its subsidiaries so as to defeat plaintiff's right under her contract with the defendant corporation. The plaintiff does not question the correctness of the defendant's acts with reference to a general policy of corporate management; regardless of whether each of the defendant's acts might be unobjectionable when individually considered, she contends that they were intentionally made to defraud her of her rights in violation of an alleged duty owed by the defendant under the contract. Any review we might make of the acts of the defendant with regard to the internal affairs of its foreign corporate subsidiaries would not be for the purpose of determining their individual correctness, but rather to review them as evidence of an intentional scheme to violate contractual duties. Any decree entered by our courts would involve damages to a promisee for breach of contract, not damages to a shareholder for mismanagement by directors of a foreign corporation. Accordingly, the lower court incorrectly decided that it was bound to dismiss the instant case.

It does not necessarily follow, however, that because the case is not subject to mandatory dismissal under

the "internal affairs" doctrine, the court below must hear the case. It is well within the power of the court, in the interests of justice, to decline to exercise its jurisdiction where, upon consideration of the parties, the witnesses, the situs of the cause of action and other kindred reasons, the litigation can more appropriately be conducted in another forum. See *Gulf Oil Corp. v. Gilbert*, supra; *Koster v. Lumbermens Mut. Casualty Co.*, 330 U. S. 518 (1947). The American Law Institute, in its Restatement (2d), Conflict of Laws (Tentative Draft No. 4 April 5, 1957), formulates the rule this way: "§117e. FORUM NON CONVENIENS. While the plaintiff ordinarily controls choice of the forum, a court does not exercise jurisdiction if it is a seriously inappropriate forum for the trial of the action so long as an appropriate forum is available to the plaintiff."[1] Whether a suit should be dismissed under the doctrine of Forum Non Conveniens will depend largely upon the particular facts and upon the discretion of the trial court. Such exercise of discretion will be overruled on appeal only when abused.

The factors for the lower court to consider in making its determination are succinctly put in the comments to §117e of the Restatement: "c. Factors to be considered. The two most important factors look to the court's retention of the case. They are (1) that

---

[1] Over a dozen jurisdictions have adopted the Forum Non Conveniens doctrine. See cases collected in Note, Courts: Discretionary Power to Decline Jurisdiction—Forum Non Conveniens, 1957 Wash. U.L.Q. 165 (1957), at n. 4. For more recent decisions, see *Winsor v. United Air Lines*, Del. , 154 A. 2d 561 (1958); *Walsh v. Crescent Hill Co.*, 134 A. 2d 653 (Wash. D.C. 1957); *Hill v. Upper Mississippi Towing Corp.*, 252 Minn. 165, 89 N.W. 2d 654 (1958); *Loftus v. Lee*, Mo. , 308 S.W. 2d 654 (1958); *Van Dam v. Smit*, 101 N.H. 508, 148 A. 2d 289 (1959); *Atchison, Topeka and Sante Fe Ry. Co. v. District Court of Creek County*, Okla. , 298 P. 2d 427 (1956), cert. denied 352 U. S. 879 (1956).

since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed in any event unless an alternative forum is available to the plaintiff. Because of the second factor, the suit will be entertained, no matter how inappropriate the forum may be, if defendant cannot be subjected to jurisdiction in other states. The same will be true if plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept defendant's stipulation that he will not raise this defense in the second state.

"The remaining factors can best be grouped under the two principal interests involved: those of the parties and those of the public. This has been done as follows by Mr. Justice JACKSON in Gulf Oil Corp. v. Gilbert, 330 U. S. 501, 508 (1947): 'If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to a fair trial. . . .

" 'Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people

of a community which has no relation to the litigation. There is an appropriateness, too, in having the trial . . . in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.'

"These two sets of factors are not mutually exclusive but rather supplement each other." The fact that the suit to some extent also involves the internal affairs of a foreign corporation is another factor to be considered in determining whether our courts should entertain the suit.

Coming to the case before us, it appears that a Pennsylvania court would provide a most inappropriate trial forum. Reviewing the facts pleaded in the light of the principles outlined above, we find that the parties are nonresidents, and that the defendant corporation is not registered to do business in this state (nor is it alleged that any offices are being maintained within our borders). The contract upon which this action is predicated was entered into in Copenhagen, Denmark, and is to be performed mostly in the Scandinavian countries and partly in New York State. Aside from the serious conflict of laws problems which will arise in determining which law applies, we have the problem of the validity of the stipulation in the contract itself that disagreements over its provisions should be settled in accordance with the laws of Denmark, and in the courts of Denmark. The sole connection the case has with Pennsylvania is the fact that a debtor of the defendant could be served herein, thus making a foreign attachment possible.

The witnesses which defendant would be required to have testify in this case are either in New York City, Denmark or other European countries; we can anticipate that it would be costly and inconvenient to have them appear in Pennsylvania. Similar inconveniences

may arise if the books and records which apparently form a substantial part of the proposed evidence must be brought here from New York City. Finally, the plaintiff would have us extend our processes and equity power beyond our borders, on the strength of assets reached only by the writ of foreign attachment, to compel an examination of books and records and other relevant documents in New York City and, assuming judgment in the plaintiff's favor, to render a decree giving plaintiff a 25% share of the Norway agency.

Nevertheless, even though we might feel that a Pennsylvania court is a most inappropriate trial forum, the case must be remanded. The court below, not having the benefit of our present decision, has neither exercised any discretion in this matter nor made any determination of whether an alternative forum is available to the plaintiff. While, on the face of the record, it would appear that either New York or Denmark might provide an appropriate forum, there is the possibility of a statute of limitations problem and also a question of whether the courts of New York State or Denmark would be willing to hear this case. Proper application of the doctrine of Forum Non Conveniens necessitates that the court below make a finding as to the availability of other forums and then exercise its discretion after considering all the factors.

Reversed and remanded for proceedings in accordance with this opinion.