## Alpers, Appellant, *v.* New Jersey Bell Telephone Company.

Argued January 3, 1961. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*S. Laurence Shaiman,* with him *Joseph D. Shein,* and *Shein and Berlant,* for appellant.

*John B. Hannum, 3rd,* with him *E. Everett Mather, Jr.,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, May 2, 1961:

May foreign attachment issue in Pennsylvania against a foreign corporation upon a cause of action arising out of a tort which occurred outside Pennsylvania?

On June 30, 1959, Harold Alpers (Alpers), a Pennsylvania resident, was a passenger in a motor vehicle in New Jersey which became involved in an accident with another motor vehicle owned and controlled by the New Jersey Bell Telephone Company (New Jersey Bell), a foreign corporation. Alpers allegedly sustained personal injuries in that accident.

A year later, Alpers caused a writ of foreign attachment to be issued in the Court of Common Pleas No. 5 of Philadelphia County against New Jersey Bell as defendant and the Bell Telephone Company of Pennsylvania (Pennsylvania Bell) as garnishee. At the same time Alpers filed a complaint[1] and New Jersey Bell and Pennsylvania Bell moved to strike off the complaint and for judgment of non pros. The court below, taking the position that foreign attachment would not lie for a tort which occurred outside Pennsylvania, granted the motion for judgment of non pros. From that action this appeal was taken.

In considering this appeal, certain facts, as alleged, may be taken as established: (1) New Jersey Bell, the alleged tortfeasor, is a foreign corporation; (2) Pennsylvania Bell, a domestic corporation and garnishee, when the writ was issued had in its possession certain property of New Jersey Bell; (3) the cause of action is a tort which occurred in New Jersey.

---

[1] This complaint was later amended.

In *Commonwealth to use v. A. B. Baxter and Company, Inc.*, 235 Pa. 179, 190, 191, 84 A. 136, we said: "The action of foreign attachment in Pennsylvania is based upon one of the customs of London: Laws and Privileges of London, 113-140; Brandon on Foreign Attachment. The purpose of the custom was to compel the appearance of the defendant and this is also true in our state: [citing cases]. Both by the custom and by our statutes the writ lay against a foreign corporation:". In *Falk & Company v. South Texas Cotton Oil Company*, 368 Pa. 199, 205, 82 A. 2d 27, we said in respect to an action begun by a writ of foreign attachment: "Two fundamental facts must coexist: (1) The defendant must be a non-resident or a foreign corporation and (2) The defendant must have real or personal property within this Commonwealth when the writ of foreign attachment was served on garnishee.". See also: *Fairchild Engine & Airplane Corporation v. Bellanca Corporation*, 391 Pa. 177, 180, 137 A. 2d 248. Alpers, relying on Pa. R. C. P. Rule 1252, urges that these cases set forth *all* the jurisdictional facts presently necessary to the issuance of foreign attachment. New Jersey Bell and Pennsylvania Bell contend that, if the cause of action for which the attachment is sought is a tort committed outside Pennsylvania, foreign attachment will not lie.

Foreign attachment—an extraordinary remedy—is a creature of statute and the statutory provisions which are subject to strict construction, furnish the sole source for the authority of a court to issue the writ. See: *Kohl v. Lyons*, 125 Pa. Superior Ct. 347, 349, 350, 189 A. 498.

The Act of June 13, 1836, P. L. 568, §44, 12 PS §2891 provided that foreign attachment could issue against the real or personal estate "of any person not residing within this commonwealth, and not being within the county in which such writ shall issue, at

the time of the issuing thereof." The Act of May 15, 1874, P. L. 183, §1, permitted foreign attachment to issue "in all cases wherein any person who, being a resident of this commonwealth, shall have removed therefrom, after having become liable in an action ex delicto." The Act of March 30, 1905, P. L. 76, §1, extended the scope of foreign attachment and permitted its issuance *"in all actions ex contractu and in actions ex delicto for a tort committed within this Commonwealth."* Until 1905, our courts consistently declared that foreign attachment would not lie in tort actions.[2]

In 1911,[3] the legislature extended the provisions of the statute regulating foreign attachment to foreign corporations and, in 1931,[4] the Act of 1836, supra, was amended so that foreign attachment might be issued against the real or personal property of a non-resident of the state temporarily in the state at the time of is-

[2] In *Porter et al. v. Hildebrand*, 14 Pa. 129, the Court said (p. 131) : "In its origin, and under the acts of 1705, and 1789, the process of foreign attachment furnished a remedy, simply for the recovery of debts or damages, arising ex contractu" and then, commenting on an attempt to extend the circle of operation of foreign attachment to include tort actions, stated such would be "a stride which would be more apt to attract admiration of its boldness than commendation of its wisdom." See: *Jacoby v. Gogell*, 5 S. & R. 450. In *Strock v. Little*, 45 Pa. 416, 419, Mr. Justice WOODWARD said: "It [foreign attachment] will not lie in actions sounding in *tort*, for it was never designed as a remedy in such cases: . . ." Mr. Justice SHARSWOOD, speaking in *Coleman's Appeal*, 75 Pa. 441, 457, stated: "It will be seen from this brief review that it has not been the policy of our jurisprudence to bring non-residents within the jurisdiction of our courts unless in very special cases. In proceeding against them for torts, even property belonging to them cannot be reached by process . . ." In *Boyer v. Bullard*, 102 Pa. 555, 557, we held that foreign attachment would not lie for a demand in tort. See also: *Wood v. Virginia Hot Springs Co.*, 202 Pa. 40, 42, 51 A. 586.

[3] Act of June 21, 1911, P. L. 1097, §1, 12 PS §2891.

[4] Act of April 24, 1931, P. L. 44, No. 36, §1, 12 PS §2891.

suance of the writ and in certain cases of residents of the state who have removed therefrom.

Until the promulgation of Rule 1252[5] both our statutes and case law after 1905 limited foreign attachment in actions ex delicto to torts which occurred within Pennsylvania. Alpers urges that Rule 1252 has changed the law in this respect and that foreign attachment will now lie for torts which occurred outside Pennsylvania. Rule 1252, in pertinent part, provides: "A foreign attachment may be issued to attach property of a defendant not exempt from execution upon any cause of action at law or in equity in which the relief sought includes a judgment or decree for the payment of money . . ." Rule 1461(4) suspends certain Acts of Assembly under which foreign attachment was previously issued.

In view of the clear restriction of the writ of foreign attachment in actions ex delicto to torts committed within the Commonwealth both by statutory and case law prior to the promulgation of Rule 1252, it was certainly not intended by this Court that Rule 1252 change or alter in any manner a rule of law not only so firmly established but also so salutary in effect. Alpers' interpretation of Rule 1252 is at variance with the intent of this Court in the promulgation of Rule 1252. The court below very properly held that a writ of foreign attachment in an action ex delicto will not lie for torts committed outside the Commonwealth's boundaries.

Judgment affirmed.

---

Dissenting Opinion by Mr. Justice Cohen:

Pennsylvania R. C. P. 1252, in pertinent part provides, "A foreign attachment may be issued to attach property of a defendant not exempt from execution, up-

---

[5] Adopted April 12, 1954 to become effective October 1, 1954.

on any cause of action at law or in equity in which the relief sought includes a judgment or decree for the payment of money. . . ." To me, this rule clearly permits the commencement of an action by the issuance of a writ of foreign attachment irrespective of whether the tort was committed within or without this Commonwealth. Our courts have recently adopted the doctrine of forum non conveniens, (See *Plum v. Tampax,* 399 Pa. 553, 160 A. 2d 549 (1960)), which could be invoked in the event that the cause of action has such limited contacts with this Commonwealth that to entertain the suit would subject the defendant to great inconvenience or unnecessarily burden our courts. I would reverse the lower court and remand the case with instructions to apply the standards set forth in *Plum v. Tampax,* supra, to determine whether it will exercise the jurisdiction which it now has over both the subject matter and the person.

By taking such action we would wisely reject the contention that Rule 1252, in expanding the scope of foreign attachment enlarged the jurisdiction of our courts in contravention of the Act of 1937, P. L. 1982, as amended, 17 PS §61 (pocket part), and was thus invalid. That foreign attachment under our statutes and our rules is a form of process and not a jurisdictional matter is evident from the Act of June 13, 1836, P. L. 568, §44, titled, "An act relating to the commencement of actions," which first provided for foreign attachment. Hence, it is clear that it was within the competence of our court under the Act of 1937, supra, to suspend any Act of Assembly which proscribed the commencement of an action by writ of foreign attachment for a tort committed outside the Commonwealth.