## Hunter v. Bayer Corporation

*Mark S. Levy, Michael Coren, John W. Baldante* and *Martin G. Rubenstein,* for plaintiffs.
*Albert G. Bixler,* for defendant.

ACKERMAN, *J.,* September 24, 2003—Defendant, Bayer Corporation, filed the instant motion to dismiss or stay pursuant to 42 Pa.C.S. §5322(e) on May 12, 2003.

This case is one of the PPA mass tort litigation cases currently coordinated in the Complex Litigation Center of the Court of Common Pleas of Philadelphia County and is one of approximately 160 PPA cases in which Bayer is the only defendant. It has been brought on behalf of Larry Hunter and his wife, Mary Ellen, who are both Washington state residents. Mr. Hunter claims to have purchased and consumed products containing phenylpropanolamine (PPA) in Washington state, namely Alka Seltzer Plus Cold medicine. Further, he alleges that, as a result of exposure to Alka Seltzer Plus Cold medicine, he sustained an injury that was discovered, diagnosed and treated in Washington state. Each and every witness to the alleged purchase of Alka Seltzer Plus Cold medicine and exposure to PPA, with the exception of one of Mr. Hunter's daughters, resides in Washington state. Moreover, each and every witness to the discovery, diagnosis and treatment of the claimed injury and other alleged damages claimed in this suit resides in Washington state. The overwhelming majority of Mr. Hunter's medical and pharmacy records and health care providers who may testify or otherwise have information relevant on the issues of causation and damages, are located in Washington state. According to plaintiff's fact

sheet (PFS), it appears that Mr. Hunter was seen by neurologist William M. Hammesfahr M.D., of Clearwater, Florida, and received treatment at Florida Neurological Institute for a period of 17 days in 2001.

An alternate forum for the adjudication of the Hunters' claim is readily available without prejudice to the plaintiffs since defendant Bayer has agreed to submit a written stipulation to accept service of process in the new forum and not raise the statute of limitations as a defense to the action.

Plaintiffs commenced this products liability action by writ of summons on November 1, 2002 in the Court of Common Pleas of Philadelphia County at October Term 2002, no. 004307. See docket entries attached to the motion as exhibit "A." A short form complaint was subsequently filed on December 30, 2002 consistent with the directives of case management order 1. See short form complaint attached to the motion as exhibit "B."

The defendant named in this case is Bayer Corporation, which plaintiffs identify as the manufacturer and seller of Alka Seltzer Plus Cold medicine. (Short form attached to the motion as exhibit "B" at ¶¶2, 7.) Bayer is an Indiana corporation with its principal place of business in Pittsburgh, Pennsylvania.

Mr. Hunter and his wife, Mary Ellen, are citizens of Washington state, currently residing at 1300 University Street, Apt. 6D, Seattle, Washington 98101. (Short form attached to the motion as exhibit "B" at §II(C).) The Hunters have resided at this Seattle, Washington address for the past 10 years. *Id.* at §II(R). Mr. Hunter has been a self-employed consultant in Seattle since 1987. *Id.* He retired in 1995 after the onset of his alleged stroke. *Id.* at §II(D).

All but one of the treating physicians identified in the PFS are located in the state of Washington. Mr. Hunter has not identified any medical provider or treating physician located in Pennsylvania nor do his records reflect that he ever sought medical treatment in Pennsylvania.

Mr. Hunter's current primary care physician is Dr. Jon P. Younger of Seattle, Washington. (PFS attached to the motion as exhibit "C," list of medical providers.) His prior primary physicians for the last 20 years, likewise, have been in Seattle, Washington: Dr. Frank Tubridy and Dr. Charles Wischman. *Id.* Mr. Hunter also treated with the following neurologists in Seattle: Dr. Teri Engelberg, Dr. Eugene F. May and Dr. Richard Mesher. *Id.* Moreover, notwithstanding the Florida Neurological Institute where he received treatment in 2001, all of the hospitals and health care facilities in which Mr. Hunter received treatment for the last 20 years are all located in Washington state. *Id.*

Mr. Hunter alleges that on or about April 13, 1995, he was diagnosed by Dr. Eric Kohler at Stevens Memorial Hospital as having sustained an intracranial hemorrhage. (Short form, exhibit "B" at ¶4; PFS, exhibit "C" at §VI(A).) Since the stroke, Mr. Hunter claims to suffer from permanent left hemiparesis, seizure disorder and chronic pain in his left shoulder and hip. (PFS, exhibit "C" at §I(C).) Mr. Hunter further alleges that the ingestion of Alka Seltzer Plus Cold medicine caused his injury. (Short form, exhibit "B" at ¶2.) Mr. Hunter allegedly purchased Alka Seltzer Plus Cold medicine from a pharmacy in Port Townsend, Washington on or about February of 1995. *Id.* at ¶3. He allegedly consumed these products from April 10, 1995 through April 13, 1995 to

alleviate cold symptoms. (PFS, exhibit "C" at §VIII(A).) There is no indication in the PFS, attached exhibits or short form that Mr. Hunter ever purchased any PPA-containing product in Pennsylvania.

The events leading to the diagnosis and treatment of the alleged injuries, as well as the diagnosis and treatment themselves, all took place in Washington state, aside from his course of treatment and examination at the Florida Neurological Institute. In the PFS, all of the treating physicians that Mr. Hunter identifies as having knowledge concerning his injury and current medical condition are all located in Washington. (PFS, exhibit "C" at §XI(D).)

Mr. Hunter contends that he first experienced symptoms that he believes to be related to the injury alleged in his complaint on April 13, 1995, at 11:30 p.m., while visiting with his granddaughter. (PFS, exhibit "C" at §X(A-D).) These symptoms included dizziness, abnormal gait and right temporal headache. *Id.* at §X(E). Mr. Hunter reports that an EMT transported him to a health care facility after the onset of his alleged stroke. *Id.* at §X(G). Mr. Hunter received treatment at Stevens Memorial Hospital in Edmonds, Washington. (Short form, exhibit "B" at ¶4.)

After the onset of his alleged stroke, Mr. Hunter was seen and treated by Drs. Demakas and Artzis in Washington, and was diagnosed with diabetes and hypertension. (PFS, exhibit "C," *id.* at §VII(I).) Mr. Hunter underwent medical testing, treatment and therapy at the following facilities and from the following providers after the onset of his alleged stroke: the Polyclinic, Seattle, Washington (January 1999 through June 2001); Swed-

ish Medical Center, Seattle, Washington (November 1998 through December 1999); Seattle Orthopedic and Fracture Clinic (January 1998 through October 1999); Connie Floyd, Physical Therapist, Seattle, Washington (March 1996 through June 2001); Seattle Acupuncture Associates, Seattle, Washington (May 1995 through November 1999); M. Rast, Physical Therapy, Seattle, Washington (June 15, 1996 through October 16, 1996); Florida Neurological Institute, Clearwater, Florida (March 2001); and Group Health Cooperative, Puget Sound, Washington (May 1997 through May 1998). (*Id.* at list of medical providers, exhibits 1 through 8.)

In sum, all but one attending and consulting physician, and health care facility which Mr. Hunter identifies as having information relative to his condition is located in Washington state. *Id.* at §XI(D). In addition to his medical providers, Mr. Hunter identifies his wife, Mary Ellen, as a witness to his alleged onset of symptoms that occurred on April 13, 1995. *Id.* Mary Ellen Hunter also lives in Washington state. *Id.* at §X(C). It appears that his daughters, Lori and Lynn Hunter, may have also witnessed the alleged injury or events preceding the injury. See *id.* Lori Hunter currently resides in Boulder, Colorado. Lynn Hunter resides in Edmonds, Washington. *Id.*

Mr. Hunter has asserted claims of negligence, strict product liability, breach of warranty, loss of consortium and punitive damages. (Short form, exhibit "B" at ¶8.) He seeks to maintain this lawsuit in Philadelphia County, even though he has never lived in this county or state, none of the witnesses to his claims reside here, none of the medical or other records pertaining to his claims are

located here, and none of the alleged purchases of or exposure to the PPA-containing product occurred here.

Rather, the only jurisdiction with any meaningful connection to this case is Washington state (where virtually all of the case-specific events giving rise to Mr. Hunter's claims took place, and where nearly all of the case-specific witnesses and evidence are located).

Plaintiffs agree as to all of the above facts.

The doctrine of forum non conveniens has been codified at 42 Pa.C.S. §5322(e), which provides as follows:

"(e) *Inconvenient forum.*—When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just." 42 Pa.C.S. §5322(e); *Cinousis v. Hechinger Department Store,* 406 Pa. Super. 500, 501, 594 A.2d 731, 732 (1991).

The case of *Humes v. Eckerd Corporation,* 807 A.2d 290 (Pa. Super. 2002), is instructive as to the standard for this court to follow in this case having clarified prior case law.

The *Humes* court stated at page 295:

"In the absence of specific guidance from the Pennsylvania Supreme Court, and after consideration of the existing body of case law, we will follow *Poley, supra,* and decline to find error in the lower court's refusal to apply *Cheeseman* to this section 5322(e) petition. . . ."

At pages 293-94, *Humes, supra,* stated:

"In *Poley v. Delmarva Power and Light Company,* 779 A.2d 544 (Pa. Super. 2001), a panel of this court addressed an appeal of a motion to dismiss for *forum non conveniens* with leave to file in the state of Maryland. In

setting forth the standard of review of an order dismissing an action on the basis of *forum non conveniens,* the *Poley* court did not apply the *Cheeseman* 'oppressive and vexatious' test, but instead declared, *inter alia,* that:

"The two most important factors for the court to consider [in making the determination of whether to dismiss a suit on the basis of *forum non conveniens*] are (1) a plaintiff's choice of the place of suit will not be disturbed except for weighty reasons, and (2) no action will be dismissed unless an alternative forum is available to the plaintiff.

*"Poley,* 779 A.2d at 546 (citing *Page v. Ekbladh,* 404 Pa. Super. 368, 590 A.2d 1278 (1991))." (emphasis in original)

The *Humes* court thus agreed that the trial court was correct in applying the "private and public factors" test instead of the "oppressive and vexatious" test (page 291). The *Humes* court reversed the trial court because a complaint in the underlying case had not yet been filed and, thus, there was an insufficient record to support dismissal under section 5322(e).

The case of *Cinousis v. Hechinger Department Store,* 406 Pa. Super. 500, 502-503, 594 A.2d 731, 732 (1991), provides the meaning of private and public factors to be considered, citing *Plum v. Tampax Inc.,* 399 Pa. 553, 560-62, 160 A.2d 549, 553 (1960), quoting comment to section 117(e) of Restatement (Second) Conflict of Laws. See also, *Rini v. New York Central Railroad Co.,* 429 Pa. 235, 238-40, 240 A.2d at 372, 373-74 (1968), as follows:

" 'It is well within the power of [a trial] court, in the interests of justice, to decline to exercise its jurisdiction where, upon consideration of the parties, the witnesses,

the situs of the cause of action and other kindred reasons, the litigation can more appropriately be conducted in another forum.' *Plum v. Tampax Inc., supra,* 399 Pa. at 560, 160 A.2d at 552. See *Koster v. (American) Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) and *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). See also, *Alford v. Philadelphia Coca-Cola Bottling Co. Inc.,* 366 Pa. Super. 510, 513, 531 A.2d 792, 794 (1987) ('[S]ection 5322(e) applies when a tribunal of this jurisdiction determines that a tribunal in another jurisdiction would offer a more convenient and appropriate situs for the action.'). The factors to be considered in making such a determination have been identified by our Supreme Court as follows:

"c. Factors to be considered. The two most important factors look to the court's retention of the case. They are (1) that since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed in any event unless an alternative forum is available to the plaintiff. Because of the second factor, the suit will be entertained, no matter how inappropriate the forum may be, if defendant cannot be subjected to jurisdiction in other states. The same will be true if plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept defendant's stipulation that he will not raise this defense in the second state.

"The remaining factors can best be grouped under the two principal interests involved: those of the parties and those of the public. This has been done as follows by Mr.

Justice Jackson in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 [67 S.Ct. 839, 843, 91 L.Ed. 1055] (1947):

"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to a fair trial. \*\*\*

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is an appropriateness, too, in having the trial \*\*\* in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

"These two sets of factors are not mutually exclusive but rather supplement each other." At pages 502-503, 594 A.2d at 732 of *Cinousis.*

In *Cinousis,* the Supreme Court further stated:

"The plaintiffs are not residents of Pennsylvania. The pertinent events giving rise to the cause of action oc-

curred outside of Pennsylvania. The relevant medical records of plaintiff's physician after the alleged accident are located outside of Pennsylvania. The known witnesses reside outside of Pennsylvania and any additional witnesses will most likely reside outside of Pennsylvania. Finally, the plaintiffs have another more convenient forum available to them in New Jersey.

"We discern no abuse of discretion in the trial court's decision.

"Because appellants are not residents of Pennsylvania, the interest of this Commonwealth in providing a forum for its residents to litigate their disputes is not implicated. See *Bolanos v. Gulf Oil Corp.,* 502 F. Supp. 689, 691 (W.D. Pa. 1980), *aff'd,* 681 F.2d 804 (3d Cir. 1982). The fact that the witnesses and documentary evidence are located in New Jersey make it *potentially* more difficult to try this case in Pennsylvania. Continued proceedings in Pennsylvania also offer the *possibility* of delay and increased costs in completing a trial. Additionally, because the events at issue in this case occurred in New Jersey, it is *likely* that the substantive rights of the parties will be determined according to New Jersey law. Under similar circumstances, it has been observed that:

"in view of the paucity of contacts that the instant litigation has with the Commonwealth of Pennsylvania, absent compelling reasons, appropriate weight should be given to the desirability of having a Pennsylvania judge interpret and apply the law of another jurisdiction to determine the respective rights and duties of the parties in question. The only discernible contact that this case has with Pennsylvania is the location of plaintiff's counsel,

and we refuse to recognize this as a compelling consideration. In sum, the circumstances presented in the instant case supply the 'weighty reasons' necessary to disturb this plaintiff's choice of forum.

"*Westerby v. Johns-Manville Corp.*, 32 D.&C.3d 163, 174-75 (Phila. Cty. 1982) (cited with approval in *Alford v. Philadelphia Coca-Cola Bottling Co. Inc., supra*). See also, *Daugherty v. Inland Tugs Co., supra* (trial court abused its discretion by refusing to dismiss lawsuit whose only contact with Pennsylvania was that plaintiff's expert witness resided there); *Norman v. Norfolk and Western Railway Co.*, 228 Pa. Super. 319, 323 A.2d 850 (1974) (same).

"In view of the absence of any significant contact between appellant's cause of action and this Commonwealth, the need to apply the substantive law of New Jersey, and the significant backlog of cases which currently plagues the dockets of the Philadelphia court system, we hold that the trial court did not abuse its discretion when it dismissed appellant's action in the instant case." *Cinousis, supra* at 504-505, 594 A.2d at 733. (emphasis added)

In the case of *Tyro Industries Inc. v. James A. Wood Inc.*, 418 Pa. Super. 296, 614 A.2d 279 (1992), the facts were essentially as follows:

"Appellant Tyro Industries (Tyro) is a New York corporation registered to do business in Pennsylvania, and which maintains its principal place of business in New York. Appellee AFCO is a business incorporated under the laws of New York. Appellee Great American Insurance Company is a New York corporation. The instant controversy was generated out of a construction project

in Northampton County, Pennsylvania, wherein Tyro was a subcontractor with the Pennsylvania Department of Transportation (PennDOT), and was required to maintain insurance coverage in order to work on that project. James Wood Inc. [later released from case], acting as an insurance broker, issued insurance coverage under a Great American Insurance Company policy. AFCO financed payment for the insurance coverage.

"The insurance contract was written and subsequently suspended, for alleged failure to pay premiums, in the State of New York. As a result of the suspension, Tyro was discharged from the construction project. Consequently, Tyro filed a complaint in the Philadelphia Court of Common Pleas alleging that Great American, AFCO, and Wood breached their contracts with Tyro when they caused the insurance coverage to be improperly suspended. . . .

"The court noted that Tyro, AFCO, and Great American are all New York corporations. Trial court opinion, 10/17/91, at 4. The court also noted that the insurance financing agreement, the insurance contract, and the alleged breach thereof all arose in New York, and that virtually all witnesses reside in New York. *Id.* The court considered these and other private factors it was required to consider in a forum non conveniens analysis. . . .

"The court took note of the fact that resolution of the case in Philadelphia County would result in a needless conflict of laws situation, because New York banking laws would apply to these facts. Trial court opinion, 10/17/91, at 6-7. The court pointed out that if the case were heard in Philadelphia, Pennsylvania tax dollars would be spent on a controversy with only tangential contacts

with Philadelphia. . . ." *Tyro, supra* at 299, 301-302, 614 A.2d at 281, 282.

The *Tyro* court also considered the state of New York's statute of limitations which provided the appellant with sufficient time within which to file another complaint in the appropriate forum (in our case, the stipulation to be filed by the defendant satisfied this requirement).

It was in the context of the necessity in *Tyro* for the filing of a new action that the *Tyro* court mentioned that "no discovery had yet been taken when the court [trial court] filed its opinion." (At page 302, 614 A.2d at 282.) The *Tyro* court does not address whether the extent of discovery already taken could by itself have changed the result.

The case of *Shears v. Rigley,* 424 Pa. Super. 559, 623 A.2d 821 (1993), provides guidance on the balancing of private and public elements or factors as follows:

"A court must balance the private and public elements and 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' *Petty,* 363 Pa. Super. at 281, 525 A.2d at 1232 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

"The trial court must consider the following 'private' elements in making this determination:

"the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if a view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

"*Petty,* 363 Pa. Super. at 281-82, 525 A.2d at 1232 (citing *Gulf Oil Corp.,* 330 U.S. at 508-509, 67 S.Ct. at 843); see also, *Rini v. N.Y. Central R. Co.,* 429 Pa. 235, 239, 240 A.2d 372, 374 (1968); *Plum v. Tampax Inc.,* 399 Pa. 553, 560-61, 160 A.2d 549, 553 (1960).

"Additionally, the following 'public' interests must be factored into the trial court's analysis:

"problems of creating court congestion and imposing jury duty upon people of a community which has no relation to the litigation; the appropriateness of having the action tried in a forum where the court is familiar with the law that must govern the case, rather than having a court in some other forum step into a quick-sand of conflict of laws problems and foreign law.

"*Petty,* 363 Pa. Super. at 282, 525 A.2d at 1232 (citing *Gulf Oil Corp.,* 330 U.S. at 508-509, 67 S.Ct. at 843); see also, *Rini v. N.Y. Central R. Co.,* 429 Pa. 235, 239, 240 A.2d 372, 374 (1968); *Plum v. Tampax Inc.,* 399 Pa. 553, 560-61, 160 A.2d 549, 553 (1960).

"Appellants have presented both 'private' and 'public' elements which, they contend, make a strong case for dismissal. The trial court found that the Shears reside and are domiciled in New Jersey; that the cause of action and location of the K-Mart department store were located in New Jersey; and, that witnesses also live in New Jersey. However, it is apparent from the trial court's 1925(b) opinion that these factors were specifically balanced against the weighty consideration to be given to a plaintiff's choice of forum. The trial court balanced these factors against the following: *that the defendant* and key witness Rigley *lives in Pennsylvania; that Mrs. Shears received some of her medical treatment in Philadelphia;*

that the *appellants sought the expert opinions of physicians located in Pennsylvania who ultimately may be called to testify at trial; and, that K-Mart maintains six stores in the Philadelphia area. The trial court concluded that the private elements* established by Rigley and K-Mart *did not . . .* override the Shears' choice of venue.

"However, our analysis does not stop here. The trial court must also analyze certain 'public' interests before reaching a determination. *Petty, supra.* Appellants take issue with the trial court's failure to consider the Philadelphia court's substantial backlog of civil cases in rendering its decision. Pennsylvania courts have long recognized the administrative burdens that follow when 'litigation is piled up in congested centers instead of being handled at its origin.' *Plum,* 399 Pa. at 561, 160 A.2d at 553. (citation omitted) It is proper for the trial court to address those considerations affecting the court's own administrative and legal problems, including court congestion. *Petty, supra.* Here, however, the trial court did not dismiss the matter. *As we find that there are sufficient contacts with the Philadelphia forum,* we decline to juxtapose the scenario where the trial court *dismisses* a matter based upon public factors with the scenario where a trial court, well within its discretion, decides to entertain the litigation.

"The appellants contend that the trial court abused its discretion in weighing the relevant factors based on the holding of this court in *Cinousis v. Hechinger Department Store,* 406 Pa. Super. 500, 594 A.2d 731 (1991). This court recognizes the significance of both the 'private' and 'public' interests to be considered by the trial court. When reviewing the trial court's decision to dis-

miss a matter based on *forum non conveniens,* this court will find an abuse of discretion if the trial court has clearly erred in weighing the factors to be considered. *Petty,* 363 Pa. Super. at 282, 525 A.2d at 1232-33. (citation omitted) In *Cinousis, the court considered whether the trial court abused its discretion in* dismissing *the action* under section 5322(e). The trial court *found that there were no contacts with the Pennsylvania forum other than the fact that the defendant had operated at least one store in Philadelphia.* In contrast, as recounted above, the trial court here found that the appellants had significant contacts with the Pennsylvania forum. Thus, the trial court's refusal to dismiss the action based on these contacts with Philadelphia County, coupled with the trial court's *implicit* finding that the matter would not be placed on a 'stockpile' of pending civil suits, was not an abuse of discretion. *Petty, supra; Brown, supra; Caplan, supra; Hosiery, supra."* *Shears, supra* at 565-67, 623 A.2d at 824-25. (emphasis added)

The *Shears* court affirmed the trial court's retention and refusal to dismiss on the merits as well as because no stipulation was offered to waive the statute of limitations, unlike the case at bar.

The very detailed affidavit of Albert G. Bixler, Esquire, attached as exhibit "A" to defendant's reply brief and offered into the record without objection, in material part provides as follows:

"...

"(2) Alka-Seltzer Plus Cold Effervescent Medicine was marketed and sold by Bayer's Consumer Care division.

"(3) Bayer's Consumer Care division was headquartered in Elkhart, Indiana until 1995. Its headquarters was

then relocated to Morristown, New Jersey where it remained until the time Bayer stopped marketing Alka-Seltzer Cold Effervescent Medicine with PPA in November of 2000.

"(4) Alka-Seltzer Plus Cold Effervescent Medicine was developed and manufactured in Indiana.

"(5) All Bayer documents relevant to this litigation are located in either New Jersey or Indiana.

"(6) None of the relevant Bayer employees is [sic] located in Pennsylvania.

"(7) Of the approximately 162 cases filed in Philadelphia County in which Bayer is the sole defendant, approximately 152, or 94 percent, are brought by non-Pennsylvanians."

In addition, the affidavit of Albert G. Bixler, Esquire, filed on September 10, 2003, and submitted for the record without objection, is also not contested by the plaintiffs as follows:

". . .

"(3) Bayer has been named as a defendant in approximately 231 cases in this court. Bayer is the sole defendant in approximately 162 of those cases. In those suits, plaintiffs allege personal injury as a result of ingesting Alka-Seltzer Plus Cold Effervescent Medicine manufactured by Bayer. . . .

"(7) Alka-Seltzer Plus Cold Effervescent Medicine was developed and manufactured in Indiana, as well as distributed from Indiana until November 2000. . . .

"III. *FACTS PERTAINING TO THE CASES AT ISSUE*

"(10) Attached hereto is a table which shows the locations of the plaintiff's residence, place of purchase of

the Alka-Seltzer Plus Cold Effervescent Medicine at issue, place of plaintiff's medical treatment and location of key witnesses for each of the cases which are subject to this motion. This information was compiled from plaintiff's complaints, fact sheets, and depositions, where available.

"(11) As this table demonstrates:

"(a) None of the plaintiffs at issue live in Pennsylvania;

"(b) None of the Alka-Seltzer Plus Cold Effervescent Medicine at issue was purchased in Pennsylvania;

"(c) None of the plaintiffs' alleged injuries occurred in Pennsylvania;

"(d) None of the plaintiffs' treatment for those alleged injuries occurred in Pennsylvania;

"(e) None of the witnesses to plaintiffs' purchase or ingestion of Alka-Seltzer Plus (if any) are located in Pennsylvania;

"(f) None of the plaintiffs' doctors or other health care professionals engaged in treatment of plaintiffs live in Pennsylvania;

"(g) None of the witnesses relevant to plaintiffs' damage claims live in Pennsylvania;

"(h) None of plaintiffs' medical records are located in Pennsylvania;

"(i) None of the documents relating to plaintiffs' supposed damages are in Pennsylvania;

"(12) As this table demonstrates, there is no connection between Pennsylvania and the specific facts of these cases.

## "IV. *THE BURDENS IMPOSED BY PLAINTIFFS' CHOICE OF FORUM*

"(13) By electing to pursue claims in Pennsylvania, the plaintiffs have imposed substantial burdens on Bayer and other defendants in this litigation.

"(14) In order to undertake discovery depositions of out-of-state witnesses, Bayer must undertake a commission process which is more cumbersome and more involved than the process required to take depositions of Pennsylvania residents.

"(15) More significantly, many out-of-state witnesses must be deposed live and in person. For many of these witnesses, that will require Bayer's counsel to travel to foreign states in order to conduct depositions.

"(16) While the plaintiffs generally have agreed to present themselves and their relatives in Pennsylvania for deposition, the remaining fact witnesses and medical witnesses must be deposed in their home states.

"(17) As a result, even a short fact witness deposition requires substantial travel and, therefore, imposes a considerable burden on Bayer in terms of attorney time and expense. . . .

"(21) This situation is compounded by the sheer number of cases brought in this jurisdiction by out-of-state plaintiffs.

"(22) As the attached table discloses, the cases at issue in this motion would involve travel to numerous states on numerous occasions if depositions of out-of-state witnesses were required.

"(23) Plaintiffs' choice of forum, therefore, imposes on Bayer expense and considerations which are not imposed by cases brought by Pennsylvania residents. In

fact, the pendency of these cases brought by out-of-state residents requires Bayer in each case, and for each out-of-state deposition, to undertake an analysis of the cost and benefit which would not be applicable in an in-state deposition. Bayer should not be forced to make decisions like this which could significantly detract from its defense of any given case, simply because the plaintiff has chosen to bring suit in a forum where neither the plaintiff, the fact witnesses, the medical treaters, nor the documents are located, and the injury did not occur.

"(24) This problem cannot be cured by videoconferencing or other technology. Videoconferencing is, at best, a poor substitute for live depositions. In situations where a witness must review documents (such as a medical doctor), videoconferencing is cumbersome and often results in confusion and poor quality transcripts. Bayer should not have to compromise on the method of discovery it uses because plaintiffs have chosen to file suit in a jurisdiction (Pennsylvania) that has no relationship to his litigation.

"(25) Moreover, persons located outside of the Commonwealth of Pennsylvania cannot be subpoenaed to appear at trial. Thus, Bayer is foreclosed from bringing to trial fact witness it might identify in various cases who are located outside of Pennsylvania.

"(26) This will prevent Bayer from bringing to trial witnesses (or even obtaining a trial deposition from them) unless those witnesses can be identified early enough before trial to allow for commissions and subpoenas to issue and travel to the witness' state to be accomplished without interfering with trial dates. If a need for a particular witness develops on the eve of trial or at trial, no

testimony from that out-of-state witness could be obtained.

"(27) Once again, this imposes burdens and hardships on Bayer which are not present in cases brought by Pennsylvania residents and deprives Bayer of opportunities to present a full and fair defense simply because of the plaintiff's strategy decisions when bringing the lawsuit.

"(28) Transfer of these cases to the states in which the plaintiffs reside would eliminate these burdens and hardships. . . .

"(30) Obviously, plaintiff's home states have a significantly higher interest in a lawsuit involving their citizens than does Pennsylvania.

"(31) Plaintiffs cannot claim that suing in their home state deprives them of any right or claim which they would otherwise have in this court. . . .

"(33) Further, plaintiffs' assertions that transfer is inappropriate because it will somehow derail this court's fall trial schedule is belied by plaintiffs' own actions. Plaintiffs have voluntarily discontinued two of the court's trial cases in recent weeks. The plaintiffs' choice to discontinue those actions has exactly the same effect on the court's trial schedule as the motion pending before this court to transfer two cases which have no connection to Pennsylvania in the first place. The only significant difference in the effect on the court's fall trial schedule is that plaintiffs were able to unilaterally dismiss two of the court's trial cases.

"(34) At present, 94 percent of the court's docket of Bayer-only PPA cases are brought by non-Pennsylvanians who are consuming a vastly disproportionate amount of this court's time and who will also consume a huge

amount of this court's trial schedule. This costs the taxpayers and litigants of *this state* dearly.

"(35) Thus, because, (1) these cases have no connection with Pennsylvania, (2) none of Bayer's relevant activities occurred in this Commonwealth, (3) the burdens upon Bayer of the pendency of these cases are manifest, (4) Bayer will be prejudiced by the lack of ability to subpoena trial witnesses if it decides such witnesses are relevant, and (5) this court and the Commonwealth of Pennsylvania have no business serving as a 'national court' for cases having no connection to Philadelphia or Pennsylvania, transfer of these cases is appropriate."

The public interest in efficient judicial administration strongly favors dismissing this action pending and refiling same in the available alternate forum of Washington. There is simply no valid reason that the people of Philadelphia County should bear the burdens of adjudicating this case, including jury duty and the expense of conducting a trial. See *Tyro Industries Inc. v. James A. Wood Inc.,* 418 Pa. Super. 296, 302, 614 A.2d 279, 282 (1992) ("if the case were heard in Philadelphia, Pennsylvania tax dollars would be spent on a controversy with only tangential contacts with Philadelphia"); *Endre v. Trump Marina,* 42 D.&C.4th 106, 110 (Phila. Cty. 1999) (opining that citizens of Philadelphia should not be subjected to jury duty in action where neither plaintiff nor defendant is a taxpaying citizen of Pennsylvania).

Trial of this lawsuit in Philadelphia would also give rise to needless legal complexity. Because Washington law would most likely apply in this case, see *Griffith v. United Air Lines Inc.,* 416 Pa. 1, 203 A.2d 796 (1964), the court would be required to engage in a conflict of

laws analysis and to apply unfamiliar foreign law. This fact alone weighs strongly against trying this action in a Pennsylvania court. See *Tyro,* 418 Pa. Super. at 301, 614 A.2d at 282 (emphasizing "appropriateness of having the action tried in a forum where the court is familiar with the law that must govern the case, rather than having a court in some other forum step into a quick-sand of conflict of laws problems and foreign law").

Perhaps the most compelling public interest factor favoring a dismissal or stay on forum non conveniens grounds is the enormous burden that this court already faces in the coordinated PPA litigation. Several hundred individual PPA cases have already been filed in Philadelphia County. Most of those cases, like this one, involve out-of-state plaintiffs who chose to file in Philadelphia County for no apparent reason other than the fact that their attorneys have their offices here—a fact of no relevance to a forum non conveniens analysis. *Cinousis v. Hechinger Department Store,* 406 Pa. Super. 500, 504, 594 A.2d 731, 733 (1991).

The plaintiffs' argument as to estoppel has never been adopted in Pennsylvania. Here, the motion was filed on May 12, 2003 (even before the bar date of June 30, 2003 for first discovery; see exhibit 4 to response discovery order no. 31); the initial test cases, are scheduled for November 2003 (¶8b of affidavit of Arnold Levin, Esquire, for plaintiffs), and as of June 9, 2003, the depositions of plaintiffs had not yet been taken (¶5 of affidavit of Rubenstein). Defendant and plaintiffs continued with discovery while this motion was proceeding out of an abundance of caution, not knowing what the decision of this court would be and in compliance with a case

management order essentially agreed to and modified by the parties without court initiation. (Discovery order no. 6, ¶6.)

Thus, under the schedule essentially prepared by all counsel, the filing by defendant of the instant motion prior to the discovery bar date cannot be said to be untimely.

While Pennsylvania cases under Rule 1006(d)(1) are analyzed under a different standard in order to transfer to another county within Pennsylvania, the case of *Borger v. Murphy,* 797 A.2d 309 (Pa. Super. 2002), approved of a change of venue three days before jury selection on a petition filed about six weeks prior to the scheduled trial, and stated that the trial court did not abuse its discretion. (At page 312-13.)

Also, the case of *James E. Wood v. DuPont,* 2003 Pa. Super. 268, Lexis 2082, decided en banc by the Superior Court, affirmed a Philadelphia common pleas court judge's transfer of a personal injury case against a DuPont research facility from Philadelphia to Bradford County and stated that timeliness *"in and of itself"* was not a bar to a court's decision to grant a *transfer* even after the close of discovery. Just as Rule 1006(d)(1) did not impose a limit on parties seeking to transfer venue, 42 Pa.C.S. §5322(e) also does not impose a time limit for parties seeking to dismiss for forum non conveniens under that statute. Just as in *Wood, supra,* plaintiff cites no case in Pennsylvania where a motion to dismiss under 42 Pa.C.S. §5322(e) was denied based solely on the timeliness of the motion.

In *Farley v. McDonnell Douglas Truck Services Inc.,* 432 Pa. Super. 456, 638 A.2d 1027 (1994), cited by plain-

tiffs (in footnote one on pages 11 and 12 of response), the Superior Court noted that the trial court which granted motion to dismiss had failed to make a finding that an alternative forum was available, unlike the instant case, and, thus, the Superior Court found the trial court had abused its discretion in dismissing the complaint. The *Farley* trial court, *supra,* failed to consider that a year's worth of discovery had taken place in Philadelphia, whereas we have considered that factor.

In this case, the fact that substantial discovery has already taken place is outweighed by the following: (1) that discovery may be utilized in the new forum, (2) by the private factor analysis showing virtually no contact with Pennsylvania, and (3) by the public factor analysis, on its own. Accordingly, this court has provided little weight to that prior discovery factor.

Here, unlike cases cited in *Farley* which considered delay as a factor, the parties themselves permitted the time for filing such a motion to dismiss and by preparing the various case management orders and providing for a discovery schedule that allowed and justified the time of filing this motion in this case. One must *await* appropriate discovery deadlines in order that the record be established that will permit consideration of a motion to dismiss pursuant to section 5322(e) if such a motion is contemplated.

More importantly, in *Farley* the appellants were residents of Philadelphia, Pennsylvania; appellant was treated in Philadelphia for his injury; and at least one of the defendants had an office in Philadelphia, all factors considered by the trial court in *Farley*. But the *Farley* court emphasized that witnesses concerning the appel-

lant's employment and other key documents and witnesses were all in Pennsylvania and *not* considered by the trial court. (At page 464, 638 A.2d at 1030.)

In that context, in *Farley,* the delay and discovery already taken was just the icing on the cake, not a single determinative factor as the plaintiffs here argue. Here the congestion is not in Philadelphia courts generally, as argued in *Farley, supra,* but in the mass tort litigation section in which Philadelphia has been a pioneer and the effectiveness of which is now in jeopardy because of the nationwide infusion of cases without significant contact or connection to Pennsylvania. Philadelphia here, unlike *Farley,* does not have an interest in a case without any significant contact and certainly not where a Pennsylvania resident is not involved.

Plaintiffs' argument that Pennsylvania is Bayer's "home state and key decisions and actions concerning the sale and marketing of Alka-Seltzer Plus containing PPA occurred here" (see page 11 of plaintiffs' response) is without merit. Plaintiffs offer no affidavit which names Pennsylvania witnesses who will testify about the sale and marketing of the product used by the plaintiff in this case.

The connection of Bayer to Pennsylvania, *i.e.,* doing business in Pennsylvania, corporate office in Pittsburgh, apply to jurisdiction and propriety of venue which are not at issue in this case. The issue here is whether private and public factors analysis represent weighty reasons to dismiss for forum non conveniens notwithstanding proper jurisdiction and venue in Pennsylvania.

Plaintiffs charge that defendant seeks to dismiss based on "mere speculation," because up to now there is no record that defendant has been hampered in defending

itself, is also without merit. *Cinousis, supra,* refers to the *"possibility of delay and increased costs in completing a trial."* (At page 504, 594 A.2d at 733.) (emphasis added) The affidavits of Bixler reasonably suggest that prior to a trial in this case, it is likely that witnesses may be unwilling to testify live and document retrieval may suddenly be difficult with attendant significant costs.

The benefits of Pennsylvania coordinated proceedings will not be lost with an action in a new forum, for example, Washington state.

The specific drug allegedly ingested by the plaintiff here was not manufactured or distributed in Pennsylvania. The general statements set forth in a brief, but not contained with specificity in an affidavit, which suggested that the harm or tortuous conduct occurred in Pennsylvania is denied with specificity in Bixler's affidavit, and no specific support is set forth in any of plaintiffs' supporting affidavits. The interests of Pennsylvania citizens to the instant case are tangential and not of any significance.

The so-called trend in mass tort pharmaceutical cases against using the doctrine of forum non conveniens just does not exist in Pennsylvania state courts, an admitted leader in the mass tort pharmaceutical area. There is enough of an exploding area of complex mass tort litigation involving Pennsylvania citizenry and/or key witnesses connected to liability and/or damages to Pennsylvania without burdening a valuable system by stretching its resources to an undesirable limit.

It certainly is reasonable from this record to conclude that the substantial choice of law decisions appear to be non-Pennsylvania in nature.

The emphasis on delay in asserting section 5322(e) motions in federal courts is not shared in Pennsylvania courts as noted *supra*. This is not the first issue on which those courts respectfully disagree.

The case at bar is not a national case and does not have strong ties to Pennsylvania. Pennsylvania intends to maintain its significant role in mass tort litigation by applying its efforts strenuously in appropriate cases with appropriate Pennsylvania contacts.

While the discovery deposition of Craig Hammes Jr., Bayer's former director of regulatory affairs, was completed in Philadelphia and that ex-employee resides in Pennsylvania, unlike any other employee or ex-employee of Bayer, no affidavit filed by plaintiffs even suggests that Mr. Hammes will be a witness called by the plaintiffs or, for that matter, by the defendants.

The general reference to the "large number of witnesses who are employees of Bayer at their headquarters in Pennsylvania" (¶17 of affidavit of Arnold Levin, Esquire) is insufficient as not one of those who will allegedly be called is mentioned.

Neither the *Frye* motion decided by this court nor the MDL activities heretofore are rendered useless to either the instant plaintiffs or those remaining plaintiffs with appropriate ties to Pennsylvania whose cases will either not be subject to section 5322(e) motions or which will not be dismissed should such a motion be filed.

This court cannot place the congestion of other courts around the country in a position paramount to the interest of Pennsylvania citizens.

A mass tort generally involves a products liability claim that can result in hundreds, sometimes thousands, of lawsuits, each claiming a separate injury often as the result

of the negligence of one or many defendants. Each plaintiff seeks to be compensated separately and in full for the damages suffered generally unlike class actions.

Since the advent of asbestos litigation, the number and scope of these cases have grown dramatically. There have been approximately 24 mass tort programs in Philadelphia and currently, there are 13 ongoing programs here: asbestos, bone screw, lead paint, carpal tunnel syndrome, latex gloves, Fen-Phen, Lotramex, the Pier 34 collapse, Silica, Propulsid, *PPA* (emphasis supplied), Baycol and Rezulin. There are presently 7,135 outstanding cases as of September 12, 2003 in the mass tort programs. In 1992, Philadelphia County was the first jurisdiction in the country to create a separate litigation program and facility, the Complex Litigation Center, to handle what the Pennsylvania Supreme Court properly envisioned as an exploding area of tort litigation. This judge was appointed to coordinate the various mass tort programs.

If the instant case is not properly dismissed under section 5322(e), then virtually no case would be subject to such dismissal and that was not the intent of that Pennsylvania legislation.

On both and either analysis of private and public factors, the balance favors a dismissal of this case because this court has determined that a tribunal in another jurisdiction, *i.e.,* Washington state, offers a more convenient and appropriate situs for the action; and Pennsylvania is an inconvenient forum. In the exercise of this court's discretion, I dismiss this matter because the circumstances presented in this case supply the "weighty reasons" necessary to disturb the plaintiffs' choice of forum.

This court finds that in the interest of substantial justice, the matter should be heard in another forum, and the plaintiffs' action is dismissed upon condition that the defendant provide the stipulation noted *supra*.

I have considered the plaintiffs' arguments suggesting that the defendants should be estopped from dismissing this case, having conducted extensive discovery prior to the filing of this motion and, while a proper item for consideration, the case law suggests that it pales in relation to the other private and public factors and, thus, on balance this case must be dismissed.

## ORDER

And now, September 24, 2003, after review of defendant Bayer Corporation's motion to dismiss or stay pursuant to 42 Pa.C.S. §5322(e), the affidavits of Albert G. Bixler, Esquire, the response of the plaintiffs thereto, the affidavits of Martin G. Rubenstein, Esquire, the affidavit of Arnold Levin, Esquire, defendant's reply brief with exhibits, plaintiffs' joint sur-reply, and after extensive argument and hearing, it is hereby ordered that defendant Bayer Corporation's motion to dismiss or stay pursuant to 42 Pa.C.S. §5322(e) is granted, and the complaint of plaintiff, Larry Hunter, and Mary Ellen Hunter, wife-plaintiff, is hereby dismissed with prejudice, conditioned upon the defendant submitting a written stipulation to accept service of process in the new forum and not raise the statute of limitations as a defense to the action.