J-A17027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| VIOLA L. SCOTT, AS THE ADMINISTRATRIX OF THE ESTATE OF WESSIE L. HARDY, DEC'D AND MICHAEL HARDY, INDIVIDUALLY IN HIS OWN RIGHT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| CONSOLIDATED RAIL CORPORATION A/K/A CONRAIL CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY AND CSX TRANSPORTATION | |
| Appellees | No. 2540 EDA 2013 |

Appeal from the Order July 18, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 02534 February Term, 2013

BEFORE: GANTMAN, P.J., PANELLA, J., and STABILE, J.

MEMORANDUM BY PANELLA, J.                **FILED DECEMBER 22, 2014**

Appellants, Viola L. Scott, as the administratrix of the Estate of Wessie L. Hardy, deceased, and Michael Hardy, individually in his own right appeal from the order granting Appellees, Consolidated Rail Corporation a/k/a Conrail Corporation, Norfolk Southern Railway Company and CSX Transportation's Motion to Dismiss on the Basis of *Forum Non Conveniens*, entered July 18, 2013, by the Honorable Arnold L. New, Court of Common Pleas of Philadelphia County. After careful review, we affirm on the basis of Judge New's well-written memorandum opinion.

The trial court ably summarized the facts underlying the instant appeal as follows.

> The claims in [Appellants'] wrongful death and survival action arise from Plaintiff Michael Hardy and [Wessie Hardy's] exposure to the chemical, vinyl chloride monomer (hereinafter "vinyl chloride"). The chemical release following a train derailment on the East Jefferson Street Bridge over the Mantua Creek in Paulsboro, New Jersey on November 30, 2012.
>
> Plaintiff Michael Hardy and decedent, Wessie Hardy (hereinafter "Decedent"), were residents of New Jersey at the time of the incident. Decedent and Plaintiff Michael Hardy, her son, lived approximately 1,600 feet away from the location of the derailment. Decedent was working in her yard at the time of the incident. Shortly thereafter, Decedent was admitted to Underwood Memorial Hospital in Woodbury, New Jersey due to difficulty breathing, chest pains and burning and irritation of the eyes. [Appellant] Michael Hardy sought medical treatment in New Jersey following the derailment. Decedent passed away in New Jersey on December 3, 2012.
>
> On March 18, 2013, [Appellees] filed preliminary objections to [Appellants'] Complaint on the Basis of *Forum Non Conveniens* Pursuant to 42 Pa. C.S.A. § 5322(e). [Appellees] also filed a Motion to Stay Proceedings in this [c]ourt that same day.
>
> [Appellants] filed their response to [Appellees'] preliminary objections on April 8, 2013 and to the Motion to Stay Proceedings on May 3, 2013. On May 6, 2013, this [c]ourt granted [Appellees'] Motion for a Protective Order and/or Stay of the Discovery, staying the matter pending a ruling on [Appellees'] *Forum Non Conveniens* Motion. [Appellants] filed their response to the instant Motion on May 9, 2013. A Rule Returnable for the *Forum Non Conveniens* Motion was heard on June 26, 2013.

Trial Court Opinion, 7/17/13 at 2-3 (footnotes omitted). Following the hearing, the trial court granted Appellees' Motion and dismissed the matter

without prejudice to re-file in New Jersey. Appellants filed a Motion for Reconsideration, which the trial court denied. This timely appeal followed.

Appellants raise the following claims on appeal:

1. Whether the [t]rial [c]ourt abused its discretion in determing that Philadelphia is an inconvenient forum when it prevented [Appellants] from taking substantive discovery regarding [Appellees'] Philadelphia-based negligence and accepted [Appellees'] misrepresentations that the actions and omissions which are the subject of this litigation arose in New Jersey and that "all the physical evidence is, in fact, in New Jersey" when, after being rewarded with dismissal, the [Appellees] disclosed to the [t]rial [c]ourt that "catalogues" of physical evidence are actually located in Philadelphia and the subsequent findings of the National Transportation Safety Board establish that negligent conduct occurred in Philadelphia?

2. Whether the [t]rial [c]ourt abused its discretion by granting [Appellees'] … Motion to Dismiss Plaintiffs' Complaint on the Basis of *Forum Non Conveniens* Pursuant to 42 Pa. C.S.A. §5322(e), finding Philadelphia to be an inconvenient forum, where the negligence actions and decisions in Philadelphia of the Philadelphia-based managers of [Appellee] Consolidated Rail Corporation, headquartered in Philadelphia, caused the train derailment, railroad bridge collapse and toxic chemical spill?

Appellants' Brief at 4-5.

We have reviewed Appellants' brief, the relevant law, the certified record, and the well-written opinion of the able trial judge, the Honorable Arnold L. New. We conclude that the claims raised in Appellants' brief are unavailing and that the trial court's opinion, filed on July 18, 2013, meticulously and accurately explains why Appellants' claims are without merit. We are satisfied that the trial court methodically examined the *forum*

*non conveniens* factors and correctly determined that a more appropriate alternative forum for this action exists in New Jersey. We are further satisfied that the alleged newly discovered evidence Appellants present in their brief does not compel us to revisit the trial court's decision, as similar evidence of this nature factored into the trial court's prior analysis. Therefore, we adopt the trial court's opinion as our own. In any future filings with this or any other court addressing this ruling, the filing party shall attach a copy of the trial court's opinion.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2014

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

HARDY, *et al.*,                 :      FEBRUARY TERM, 2013

                      :      NO. 2534

          Plaintiffs,    :

                      :

     vs.                   :      CONTROL NO.: 13042445

                      :

CONSOLIDATED RAIL        :

CORPORATION, *et al.*,       :

                      :

          Defendants.    :

## OPINION

New, J.                                               July 17, 2013

## PROCEDURAL AND FACTUAL HISTORY

Plaintiffs Viola L. Scott, as the Administratrix of the Estate of Wessie L. Hardy, deceased, and Michael Hardy (hereinafter "Plaintiffs") commenced this wrongful death and survival action against Defendants Consolidated Rail Corporation a/k/a Conrail Corporation (hereinafter "Conrail"); Norfolk Southern Railway Company a/k/a Norfolk Southern Corporation; CSX Transportation, Inc.; CSX Corporation; Seminole Gulf Railway, L.P.; Oxyvinyls LP (hereinafter "Oxyvinyls"); Exxon Mobil Corporation; Union Tank Car Company; Murex, N.A., Ltd d/b/a Murex Ltd.; and Gatz Corporation by way of Complaint on February 25, 2013.[1]

On April 19, 2013, Defendants, Consolidated Rail Corporation, Norfolk Southern Railway Company and CSX Transportation, Inc. (collectively, "Defendants"), filed the instant Motion to Dismiss Plaintiffs' Complaint on the Basis of *Forum Non Conveniens* Pursuant to 42

---

[1] The following defendants were dismissed without prejudice by way of stipulation: (1) CSX Corporation on March 15, 2013; (2) Exxon Mobil Corporation on April 5, 2013; (3) Gatx Corporation on April 21, 2013; (4) Seminole Gulf Railway, L.P. on April 21, 2013; (5) Murex LLC on May 2, 2013; and (6) Oxyvinyls on July 9, 2013.

Pa. C.S.A. § 5322(e) (hereinafter the "Motion"). For reasons set forth herein, this Court grants Defendants' Motion on the determination an alternative forum exists on the present record and the weighty reasons strongly favor dismissal of the matter without prejudice to re-file in New Jersey.

The relevant facts and procedural history are as follows. The claims in Plaintiffs' wrongful death and survival action arise from Plaintiff Michael Hardy and Decedent's exposure to the chemical, vinyl chloride monomer (hereinafter "vinyl chloride"). The chemical release occurred following a train derailment on the East Jefferson Street Bridge over the Mantua Creek in Paulsboro, New Jersey on November 30, 2012.[2]

Plaintiff Michael Hardy and decedent, Wessie Hardy (hereinafter "Decedent"), were residents of New Jersey at the time of the incident. Decedent and Plaintiff Michael Hardy, her son, lived approximately 1,600 feet away from the location of the derailment.[3] Decedent was working in her yard at the time of the incident.[4] Shortly thereafter, Decedent was admitted to Underwood Memorial Hospital in Woodbury, New Jersey due to difficulty breathing, chest pains and burning and irritation of the eyes.[5] Plaintiff Michael Hardy sought medical treatment in New Jersey following the derailment.[6] Decedent passed away in New Jersey on December 3, 2012.[7]

On March 18, 2013, Defendants filed preliminary objections to Plaintiffs' Complaint. On April 19, 2013, Defendants filed the instant Motion to Dismiss Plaintiffs' Complaint on the Basis of *Forum Non Conveniens* Pursuant to 42 Pa. C.S.A. § 5322(e). Defendants also filed a Motion to Stay Proceedings in this Court that same day.

---

[2] Plaintiffs' Complaint (hereinafter "Compl.") at ¶¶ 2, 29.
[3] Compl. at ¶¶ 61, 64.
[4] Id. at ¶ 4.
[5] Id. at ¶ 68.
[6] Deposition of Michael Hardy, 6/30/13 (hereinafter "Hardy Dep.") at 22-23.
[7] Compl. at ¶ 7.

2

Plaintiffs filed their response to Defendants' preliminary objections on April 8, 2013 and to the Motion to Stay the Proceedings on May 3, 2013. On May 6, 2013, this Court granted Defendants' Motion for a Protective Order and/or Stay of the Discovery, staying the matter pending a ruling on Defendants' *Forum Non Conveniens* Motion.[8] Plaintiffs filed their response to the instant Motion on May 9, 2013. A Rule Returnable for the *Forum Non Conveniens* Motion was heard on June 26, 2013.[9]

After careful consideration of the parties' arguments and the fully briefed papers and supporting evidence, this Court grants Defendants' Motion and dismisses the matter without prejudice to re-file in New Jersey.

## LEGAL ANALYSIS

A trial court may dismiss an action on the basis of forum non conveniens with leave to re-file in another state pursuant to 42 Pa. C.S. § 5322(e) even though jurisdiction and venue are proper.[10] Section 5322(e) provides: "When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just."[11]

In determining whether to dismiss a suit on the basis of forum non conveniens, the court must consider two important factors: (1) a plaintiff's choice of forum will not be disturbed except for weighty reasons; and (2) no action will be dismissed unless an alternative forum is

---

[8] This Order did not pertain to any discovery the parties were permitted to perform in relation to the June 26, 2013 Rule Hearing.

[9] Defendant Oxyvinyls also filed a Motion to Dismiss Plaintiffs' Complaint on the Basis of *Forum Non Conveniens* Pursuant to 42 Pa. C.S.A. § 5322(e), which was scheduled to be heard with the instant Motion. However, at the June 26, 2013 Rule Hearing, Plaintiffs and Defendant Oxyvinyls advised the Court that Plaintiffs were dismissing the action against this defendant, and thus, Defendant Oxyvinyls was withdrawing its *Forum Non Conveniens* Motions. Transcript of Evidentiary Hearing, 6/26/13 (hereinafter "Hr'g Tr.") at 4-5. Pursuant to counsels' representations, the Court entered an order, dismissing Defendant Oxyvinyl's *Forum Non Conveniens* Motion as moot. See Court Order 6/26/13. Accordingly, this Opinion does not address Defendant Oxyvinyls' Motion.

[10] Engstrom v. Bayer Corp., 2004 PA Super 223, 855 A.2d 52, 55 (Pa. Super. 2004) (citation omitted).

[11] 42 Pa. C.S. § 5322(e).

3

available to the plaintiff.[12]

In addressing whether an alternative forum exists, our Supreme Court explained:

> Because of [this] factor, the suit will be entertained, no matter how inappropriate the forum may be, if defendant cannot be subjected to jurisdiction in other states. The same will be true if plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept defendant's stipulation that he will not raise this defense in the second state.[13]

"[T]he trial court must examine both the private and public interests involved" to determine whether weighty reasons exist to overcome a plaintiff's chosen forum.[14] "These two sets of factors are not mutually exclusive but rather supplement each other."[15] The private factors the trial court must consider include:

> the relative ease of access to sources of proof; availability of the compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of a view of the premises, if a view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.[16]

In addressing the public interest factors, the Pennsylvania appellate courts recognize:

> administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community that has no relation to the litigation. There is an appropriateness, too, in having the trial in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle the problems in conflict of laws, and in law foreign to itself.[17]

---

[12] Engstrom, 855 A.2d at 55 (citing Plum v. Tampax, Inc., 399 Pa. 553, 160 A.2d 549, 553 (1960)); see also Humes v. Eckerd Corp., 807 A.2d 290, 293-94 (Pa. Super. 2002) (citing Poley v. Delmarva Power & Light Co., 2001 PA Super 182, 779 A.2d 544, 546 (Pa. Super. 2001)).

[13] Plum, 399 Pa. at 561, 160 A.2d at 551.

[14] Jessop v. ACF Indus., LLC, 2004 PA Super 367, 859 A.2d 801, 803 (Pa. Super. 2004) (citing Engstrom, 855 A.2d at 56).

[15] Plum, 399 Pa. at 553, 160 A.2d at 562 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

[16] Jessop, 859 A.2d at 803 (quoting D'Alterio v. N.J. Transit Rail Operations, Inc., 2004 PA Super 42, 845 A.2d 850, 852 (Pa. Super. 2004)).

[17] Id. at 803-804.

4

To justify dismissal on the basis of forum non conveniens, "the private and public factors must be strongly in favor of the party moving for dismissal."[18]

In the case at hand, Defendants argue dismissal of this action is appropriate since "the derailment and chemical release occurred entirely within the State of New Jersey, it appears likely that the vast majority of witnesses and evidence will be located in New Jersey."[19] Upon careful review of the record, this Court agrees and dismisses the action without prejudice to re-file in the state of New Jersey.

## A. Alternative Forum Exists

The threshold inquiry of whether an alternative forum exists is satisfied in this matter. The Court takes judicial notice the two-year statute of limitations for personal injury and wrongful death claims and survival actions in New Jersey has not run as the incident occurred on November 30, 2012.[20] Therefore, Defendants' waiver of the statute of limitations is not required at this time.

However, Defendants state: "the moving Defendants would be willing, if necessary to enable re-filing in New Jersey, to stipulate to the tolling of the applicable statute of limitations."[21] Thus, Defendants have agreed to waive the statute of limitations, if necessary. Further, Defendants have consented to submit to the jurisdiction of the state court of New

---

[18] Id. at 804.

[19] Defendants' Motion to Dismiss Plaintiffs' Complaint on the Basis of *Forum Non Conveniens* Pursuant to 42 Pa. C.S.A. § 5322(e) (hereinafter "Dfts.' Motion") at ¶ 7.

[20] N.J.S.A. § 2A:14-2 (two-year statute of limitations for personal injury actions); N.J.S.A. § 2A:31-3 (wrongful death action must be commenced within two years after death of the decedent unless the death resulted from murder, aggravated manslaughter or manslaughter for which the defendant has been convicted found not guilty by reason of insanity or adjudicated delinquent); N.J.S.A. § 2A:15-3 (two-year statute of limitations for survival actions unless the death resulted from murder, aggravated manslaughter or manslaughter for which the defendant has been convicted found not guilty by reason of insanity or adjudicated delinquent).

[21] Dfts.' Motion at ¶ 16.

5

Jersey.[22] As such, there is no dispute this matter can be filed in Plaintiffs' home state as a suitable, alternative forum.

**B. Private and Public Factors Weigh Strongly in Favor of Dismissal**

Next, an examination of the private and public interest factors strongly favor dismissal of this action with leave to re-file in New Jersey.

**1. Private Factors Weigh in Favor of Dismissal**

With respect to the private factors set forth above, all pertinent events occurred in New Jersey. It is undisputed the train derailment and subsequent chemical spill occurred in New Jersey. Plaintiff Michael Hardy and Decedent resided in New Jersey at the time of the incident and exposure. Plaintiff Michael Hardy still resides in New Jersey. Plaintiffs' claims are premised on their alleged exposure from the release of the chemical vinyl chloride following the November 30, 2012 train derailment.

Regarding the sources of proof, it is undisputed Decedent and Plaintiff Michael Hardy received medical treatment in New Jersey from New Jersey physicians. Decedent was admitted to Underwood Memorial Hospital in Woodbury, New Jersey.[23] Plaintiff Michael Hardy sought medical treatment in New Jersey following the derailment.[24] Thus, the relevant medical records are located outside of Pennsylvania.

Moreover, a vast majority of the identified, as well as likely additional, fact witnesses reside in New Jersey. As noted above, Plaintiff Michael Hardy resided in New Jersey at the time of the train derailment and chemical release, and all treating physicians are located in New Jersey.

---

[22] Id. See Jones v. Borden, Inc., 455 Pa. Super. 110, 116, 687 A.2d 392, 395 (1996) ("A stipulation made by a defendant that he or she will submit to service of process and not raise the statue of limitations as a defense has been accepted by the courts as eliminating the concern regarding the availability of an alternative forum.").
[23] Compl. at ¶ 68.
[24] Hardy Dep. at 22-23.

Additionally, Plaintiffs identified Rodney Richards, a Paulsboro, New Jersey police officer, as the First Responder to arrive on scene.[25] Plaintiffs also produced the affidavit of Donald Grey, a Sergeant for the Paulsboro, New Jersey Police Department, who was assigned to the East Jefferson Street Bridge immediately following the train derailment.[26] Sergeant Grey not only eye-witnessed the immediate aftermath of the derailment and chemical spill, but also "continued to work a 7:00 a.m. to 7:00 p.m. shift for the next fourteen days."[27] Further, Plaintiffs identified Dawn Carr, a New Jersey resident, as a fact witness.[28]

However, Plaintiffs argue the following Defendant witnesses, "who were involved in, or are responsible for, the November 30, 2012 train derailment, railroad bridge collapse and spill of toxic chemicals in Paulsboro, New Jersey" are located in Philadelphia, Pennsylvania: (1) the Train Engineer; (2) the Train Conductor; (3) the Train Dispatcher; (4) the Structures Supervisor; (5) the Trainmaster; (6) the Construction Engineer; and (7) the Signal Supervisor.[29] Plaintiffs further argue:

> the documents which relate to the derailment, maintenance of the bridge, and employment files of the Conrail employees whose conduct caused the catastrophe are also located in Philadelphia.[30]

With respect to Defendants' identified and/or unidentified corporate designee witnesses and documentary evidence, it is uncontested these witnesses and evidence are under Defendants'

---

[25] Hr'g Tr. at 41; Affidavit of Rodney Richards (hereinafter "Richards Aff.") at ¶ 2. Officer Richards is a plaintiff in another case pending in Philadelphia arising from the November 30, 2012 train derailment and chemical spill. Richards Aff. at ¶ 13.

[26] See Affidavit of Donald Grey (hereinafter "Grey Aff.") at ¶ 2. Sergeant Grey is a plaintiff in another case pending in Philadelphia arising from the November 30, 2012 train derailment and chemical spill. Grey Aff. at ¶ 9.

[27] Grey Aff. at ¶¶ 3-4.

[28] Affidavit of Dawn Carr.

[29] Plaintiffs' Response in Opposition to Defendants Consolidated Rail Corporation, Norfolk Southern Railway Company and CSX Transportation, Inc.'s Motion to Dismiss the Complaint on the Basis of *Forum Non Conveniens* Pursuant to 42 Pa. C.S.A. § 5322(e) (hereinafter "Pls.' Response) at ¶¶ 6-7; see also Plaintiffs' Memorandum of Law in Opposition to Defendants Consolidated Rail Corporation, Norfolk Southern Railway Company and CSX Transportation, Inc.'s Motion to Dismiss the Complaint on the Basis of *Forum Non Conveniens* Pursuant to 42 Pa. C.S.A. § 5322(e) (hereinafter "Pls.' Memo") at 6, 12.

[30] Pls.' Memo at 12; see also Pls.' Response at ¶ 7.

7

control. Defendants have represented they will produce all Conrail designee witnesses and documentary evidence in their possession in New Jersey as required by law.[31] Accordingly, the six (6) Philadelphia-based police officers hired by Defendant CSX Transportation, Inc., who traveled to the East Jefferson Street Bridge immediately after the derailment and were involved in the communications of information and investigation regarding this incident, are likewise under Defendants' control. Pursuant to Defendants' representations, these witnesses will be produced in New Jersey as required by law.

Moreover, although the Conrail witnesses are identified with a corporate address of 1717 Arch Street, Philadelphia, Pennsylvania, the evidentiary record shows most of these corporate witnesses were not "based" in Philadelphia. Rather, discovery on this issue reveals the majority of the identified agents were based out of, or worked in, New Jersey, not Pennsylvania.[32]

Specifically, the train engineer and train master worked out of Paulsboro, New Jersey,[33] and the train conductor worked out of Morrisville, New Jersey at the relevant time.[34] The dispatcher, construction engineer, and Conrail's chief engineer were located in Mt. Laurel, New Jersey during the subject period.[35] Further, the road foreman worked out of Camden, New Jersey, and the signal supervisor worked out of Woodbury, New Jersey.[36] Regardless of the

---

[31] Hr'g Tr. at 39; see also Railroad Defendants' Reply to Plaintiffs' Answer to Defendants' Motion to Dismiss Plaintiffs' Complaint on the Basis of *Forum Non Conveniens* Pursuant to 42 Pa. C.S.A. § 5322(e) (hereinafter "Dfts.' Reply") at 8. Defendants argue the record shows the documents Plaintiffs identified are located in Mount Laurel, New Jersey. See, e.g., Deposition of Jonathan Broder, 6/12/13 (hereinafter "Broder Dep.") at 21 (trouble tickets), 59-60 (bridge inspection, repair and engineering records); Deposition of Jerry Kaminski, 6/17/13 (hereinafter "Kaminski Dep.") at 25-26 (bridge maintenance log); Deposition of Ryan M. Hill, 6/13/213 at 37-38 (Conrail bridge reports maintained in Mount Laurel, New Jersey). However, to the extent any of the evidence in Defendants' control is located outside of New Jersey, Defendants have agreed to produce all such evidence in New Jersey.

[32] See, e.g., Broder Dep. at 12-13 (Service Planning Department), 26-27 (Chief Engineer), 47-48 (Chief Risk Officer); Deposition of Wilbert Den Ouden, 6/14/13 (hereinafter "Den Ouden Dep.") at 10-11, 15 (Conductor); Deposition of Jon A. Havelick, 6/17/13 (hereinafter "Havelick Dep.") at 8 (Dispatcher).

[33] Deposition of Mark Mather, 6/14/13 at 7-8; Deposition of Gary Fillingame, 6/12/13 at 9; Broder Dep. at 83-84.

[34] Den Ouden Dep. at 10-11, 15.

[35] Havelick Dep. at 7-9; Broder Dep. at 26-27, 82; Kaminski Dep. at 7-8, 16.

[36] Deposition of Ryan P. Keating, 6/13/13 (hereinafter "Keating Dep.") at 15-16; Deposition of David G. Ohr,

agents' locations, Defendants have represented they will produce all corporate designee witnesses, along with all discoverable documentary evidence under their control, in New Jersey.

Second, consideration of the availability of attendance of any unwilling and the cost of obtaining attendance of the willing witnesses weighs in favor of dismissal. As noted above, Plaintiffs are located in New Jersey as are a vast majority of the currently identified fact witnesses. In their Sur-Reply, Plaintiffs identify additional non-party witnesses involved in the emergency response, First Responders from the U.S. Coast Guard Personnel and Federal Railroad Authority representatives, located in this Commonwealth.[37]

With respect to the availability of the attendance of unwilling witnesses, this Court notes Pennsylvania recently adopted the Uniform Depositions and Discovery Act (hereinafter the "UIDDA") whereas New Jersey has not as of the date of the filing of this Motion. Pennsylvania's UIDDA, 42 Pa. C.S. §§ 5331-5337, replacing 42 Pa. C.S. § 5326, governs foreign depositions and subpoenas and applies to "civil action[s] or proceeding[s] in foreign actions where discovery is sought in this Commonwealth."[38]

Pursuant to the plain language of the statute, the UIDDA does not apply to the reverse situation wherein a Pennsylvania litigant is seeking discovery from a foreign, non-party witness, i.e., a New Jersey witness such as Plaintiffs' treating physicians or the other identified non-party, fact witnesses located in New Jersey. Thus, if a non-party witness refuses to voluntarily give his testimony or statement or produce documents or other things for use in a matter, the UIDDA is applicable only if this suit is dismissed and re-filed in New Jersey.

This factor, therefore, weighs in favor of dismissal based upon the fact a vast majority of

---

6/13/13 at 10.

[37] Plaintiffs' Sur-Reply Memorandum in Opposition to Defendants' Motion to Dismiss on the Basis of *Forum Non Conveniens* Pursuant to 42 Pa. C.S.A. § 5322(e) (hereinafter "Pls.' Sur-Reply") at 15-16.

[38] 42 Pa. C.S. § 5332.

non-party, fact witnesses are located in New Jersey, and the UIDDA provides a mechanism for out-of-state counsel to order a person who is domiciled in or found within this Commonwealth, including the First Responders and representatives from the Federal Railroad Authority based out of Pennsylvania, to give testimony or a statement or to produce documents or other things for use in the New Jersey matter.

The third element, the possibility of a view of the premises, if appropriate, weighs in favor of dismissal as the situs of the incident is New Jersey. Finally, all other practical problems that make a trial easy, expeditious and inexpensive weigh in favor of dismissal.

At the time of the filing of this Motion, thirteen (13) suits have been filed in New Jersey in connection with the November 30, 2012 train derailment and chemical release. The first of these New Jersey suits were filed before the instant litigation. On February 8, 2013, the Honorable Robert B. Kugler of the United States District Court for the District of New Jersey ordered the consolidation of the New Jersey matters under one docket for purposes of discovery and case management.[39]

While this Court recognizes the nature of the claims differ and thus, consolidation with the medical monitoring cases may not be appropriate for trial, it is undisputed this litigation arises from the same November 30, 2012 derailment and Plaintiffs assert many of the same claims as raised in the other matters, i.e., negligence and strict liability. As such, fact discovery on the issue of liability would be identical.

An order denying this Motion would require the Pennsylvania litigants to engage in independent and separate discovery, some of which will be duplicative of the discovery currently being conducted in the consolidated New Jersey actions. Thus, judicial efficiency and more expeditious and less costly resolution of the parties' claims could still be achieved by

---

[39] See In re Paulsboro Derailment Cases, Dkt. No. 1, No. 1:13-cv-784-RBK-KMW (D.N.J.).

10

consolidating this matter with the other medical monitoring claims for purposes of fact discovery, but not for trial.

Further, since the derailment and chemical release occurred in New Jersey, this Court recognizes, without engaging in a choice-of-law analysis at this stage of the litigation, an application and interpretation of New Jersey law might be required. This Court is more than capable of performing this task, if necessary. However, a New Jersey judge more familiar with that forum's substantive laws would render a decision more efficiently.[40]

It also should be noted a possibility of inconsistent judgments exists in the Pennsylvania and New Jersey actions if this Court applied Pennsylvania law while Judge Kugler applied New Jersey law to the identically raised claims. Such an inconsistency runs contrary to the goals of achieving judicial economy and efficient administration of justice. Accordingly, the private factors weigh in favor of the dismissal of this matter with leave to re-file in New Jersey.

### 2. Public Factors Weigh in Favor of Dismissal

On the present record, the enumerated public factors also favor dismissal of the instant litigation on the basis of forum non conveniens. It is important to note the standard governing a motion for dismissal pursuant to 42 Pa. C.S. § 5322(e) differs from the standard governing preliminary objections to venue pursuant to Pa. R.C.P. 1028(a)(1) or a petition/motion to transfer venue "for the convenience of parties" pursuant to Pa. R.C.P. 1006(d)(1).

Instantly, all parties agree venue properly lies against Defendants in Philadelphia County due to the location of Defendant Consolidated Rail Corporation's headquarters at 1717 Arch Street, Philadelphia, Pennsylvania and Defendant CSX Transportation, Inc.'s presence in

---

[40] Plum, 399 Pa. at 562, 160 A.2d at 553 ("There is an appropriateness, too, in having the trial . . . in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.") (citation omitted).

11

Philadelphia County.[41] However, the fact venue properly lies against Defendants in Philadelphia County does not foreclose the trial court from dismissing a matter pursuant to 42 Pa. C.S. § 5322(e) upon review of the weighty factors.

Here, Plaintiffs oppose dismissal on the ground "Defendant Consolidated Rail Corporation's corporate decisions, actions and omissions which led to the bridge derailment, bridge collapse and chemical spill" occurred in Philadelphia.[42] Specifically, Plaintiffs argue the negligence underlying this incident emanates from Defendant Conrail's Philadelphia-based managers' decision to continue to use the East Jefferson Street Bridge.[43] Thus, Plaintiffs maintain "the Commonwealth of Pennsylvania and County of Philadelphia have a substantial interest in adjudicating this case because the company which caused this catastrophe is headquartered in Philadelphia."[44]

Accordingly, Plaintiffs aver the factual scenario of this matter is similar to Hunter v. Shire US, Inc.,[45] a pharmaceutical failure-to-warn case, and Wright v. Aventis Pasteur, Inc.,[46] a product-liability litigation. However, upon review, those matters are distinguishable from the matter at hand.

In Wright, the plaintiffs, Texas residents, instituted the product-liability litigation on the allegation their son's neurological damage was caused by his exposure to mercury contained in the manufacturer defendants' blood products and vaccinations.[47] In moving for dismissal under 42 Pa. C.S. § 5322(e), the manufacturing defendants argued all pertinent events occurred in

---

[41] Hr'g Tr. at 9-10.
[42] Pls.' Response at ¶¶ 6, 8, 10.
[43] Pls.' Sur-Reply at 18.
[44] Pls.' Memo at 14.
[45] Hunter, 2010 PA Super. 39, 992 A.2d 891 (Pa. Super. 2010).
[46] Wright, 2006 PA Super. 203, 905 A.2d 544 (Pa. Super. 2006).
[47] Id. at 545.

12

Texas, including where the plaintiff received the vaccine.[48] The trial court agreed and granted the dismissal.[49]

On appeal, the Pennsylvania Superior Court reversed, finding the trial court had abused its discretion after weighing the private and public factors.[50] First, the Superior Court noted the defendants had filed their *forum non conveniens* motion on the last day for submission of pretrial motions, three (3) months prior to the scheduled trial date, even though the case had been in progress for two (2) years.[51]

Second, the plaintiffs argued the public factors weighed against dismissal since "the crux of this litigation revolve[d] around the decisions made by the product manufacturers [in the greater Philadelphia metropolitan area] to use thimerosal, a substance known to be toxic to humans, as a preservative in their products, and to distribute these dangerous products, without adequate warning throughout the world."[52] The Superior Court agreed, noting all five counts of negligence were premised on that allegation.[53]

The Pennsylvania Superior Court discussed Wright at length when deciding whether dismissal on the basis of *forum non conveniens* was proper in Hunter v. Shire US, Inc.,[54] a pharmaceutical failure-to-warn case. There, the plaintiff had sued the prescription drug manufacturer after suffering a heart attack from the ingestion of the prescription drug, Adderall.[55] The manufacturing defendants sought dismissal, arguing the plaintiff had no connection to Pennsylvania since he resided in Georgia, his medical care was administered there,

---

[48] Id. at 550.
[49] Id. at 547.
[50] Id.
[51] Id. at 551.
[52] Id. at 549.
[53] Id.
[54] Hunter, 992 A.2d 891.
[55] Id.

and he was prescribed and ingested the prescription drug outside of Pennsylvania.[56]

Similar to Wright, the plaintiff opposed dismissal on the ground "the circumstances of his ingestion of Adderall and ensuing medical care [were] largely settled."[57] The Pennsylvania Superior Court agreed, stating: "[t]here is no question that the central issue herein relates to [the defendants'] development, testing and marketing of Adderall, and its knowledge of and warnings about the risks of heart attack from ingesting that drug."[58]

Unlike Wright and Hunter, the cause of the November 30, 2012 derailment is "not largely settled." The National Transportation Safety Board is currently investigating the incident and has not yet released its investigation results. Additionally, discovery in this matter was stayed pending a determination of the instant Motion. Thus, this litigation does not suffer from the same procedural concerns the Pennsylvania Superior Court raised in Wright, supra.

Moreover, although Plaintiffs argue "[t]he citizens and government of Philadelphia have a substantial interest in this case" as a result of Defendants' transport of hazardous materials across Conrail's bridges located in Philadelphia, Plaintiffs acknowledge the decision to proceed across the East Jefferson Street Bridge on the morning of November 30, 2012, contrary to the signal indicating not to do so, was made in New Jersey.[59]

Deposition testimony conducted in connection with this Motion confirms the decision to authorize the train to cross the East Jefferson Street Bridge on the morning of November 30, 2012 was made in New Jersey.[60] Further, the allegations included in Plaintiffs' Complaint suggest the derailment and subsequent chemical release may have resulted from the conduct of

---

[56] Id. at 893.

[57] Id. at 893-94.

[58] Id. at 895.

[59] Pls.' Sur-Reply at 19-20. The record also shows the train came from Camden, New Jersey before it crossed the East Jefferson Street Bridge. Den Ouden Dep. at 17. In fact, the train was "pieced together" in Camden, New Jersey. Id. at 17-18.

[60] Havelick Dep. at 7-11.

14

Defendants' agents in New Jersey, specifically at the bridge situs and the Mount Laurel Base.

In their Complaint, Plaintiffs allege:

> 44. On the morning of November 30, 2012, the bridge light was red, indicating that the bridge was not properly aligned and locked and that the train engineer should not proceed across the bridge.
>
> 45. Defendant Conrail, an owner of the East Jefferson Street Bridge and operator of the train, promulgates a rule which states:
>
>> When a train encounters a Stop Signal at a moveable bridge, the Train Dispatcher must not authorize the train to pass the Stop Signal until a qualified employee examines the bridge and determines that the rails are properly lined and the bridge is safe for movement.
>
> 46. Upon information and belief, the train engineer then contacted the Mount Laurel-based dispatch operator, and requested permission to cross the East Jefferson Street Bridge.
>
> 47. Upon information and belief, the train engineer, in consultation with the Mount Laurel-based dispatch operator, consciously and recklessly decided to proceed across the East Jefferson Street Bridge with freight which included hazardous and toxic substances.
>
> 48. The Railroad Defendants' agents' decision to cross the East Jefferson Street Bridge carrying hazardous and toxic chemicals while the light was red constitutes a conscious disregard for the health, welfare and safety of the residents of Paulsboro, New Jersey, particularly Wessie Hardy.[61]

These allegations suggest the derailment and subsequent chemical release resulted from the Railroad Defendants' agents' decision to permit the train to proceed across the bridge, notwithstanding the "red signal," which indicated the bridge was not properly positioned. Such allegations concern the negligent conduct of the train engineer and dispatcher, who were not located in Pennsylvania, rather than Defendant Consolidated Rail Corporation's corporate

---

[61] Compl. ¶¶ 44-48; see also Compl. at ¶¶ 104-106, 111(s), 147-149, 157(s), 183.

decisions, action and omissions made the previous year.[62]

Upon review of the record, the weighty reasons, i.e., the private and public interest factors, strongly favor dismissal on the basis of *forum non conveniens*. It is undisputed Plaintiffs and Decedent were residents of New Jersey at the time of the incident, Decedent and Plaintiff Michael Hardy received medical treatment in New Jersey by New Jersey physicians, all relevant medical records are located in New Jersey, a vast majority of the non-party, fact witnesses are located in New Jersey and, to the extent witnesses or evidence under Defendants' control are located in Pennsylvania, Defendants have represented they will produce all corporate designee witnesses and documentary evidence in their possession in New Jersey.[63]

Accordingly, this Court finds the weighty reasons strongly favor dismissal of the instant litigation without prejudice to re-file in New Jersey.

## CONCLUSION

**WHEREFORE**, for the reasons stated above, this Court grants Defendants' Motion and dismisses the case with leave to re-file in the state of New Jersey.

BY THE COURT:

ARNOLD L. NEW, J.

---

[62] Havelick Dep. at 7-11.
[63] The Court notes the citizens of Philadelphia County should not be burdened with jury duty and the expense of conducting a trial wherein the record shows the controversy has only tangential contacts with Philadelphia, and the citizens of New Jersey have a stronger community interest in resolving the dispute as being the location of the incident.

16