J-A18015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PHYLLIS DICKERSON, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF ROBERT DICKERSON, ROBERT DICKERSON | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : : | No. 3131 EDA 2024 |
| UNITED STATES STEEL CORPORATION, SUNOCO, INC. (R&M) F/K/A SUN COMPANY, INC. AND F/K/A SUN OIL COMPANY, INC., RADIATOR SPECIALTY COMPANY, CRC INDUSTRIES, INC., HENKEL CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO LOCTITE CORPORATION AND HENKEL LOCTITE CORPORATION, BP PRODUCTS NORTH AMERICA, INC., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO SINCLAIR OIL CORPORATION, ATLANTIC RICHFIELD COMPANY, EXXON MOBIL CORPORATION, UNIVAR USA, INC. F/K/A AND SUCCESSOR-IN-INTEREST TO UNIVAR CORPORATION, VWR UNITED AND VAN WATERS & ROGERS, INC., AND AS SUCCESSOR-IN-INTEREST TO CHEMCENTRAL CORP., SUCCESSOR-IN-INTEREST TO SOUTHWEST SOLVENTS & CHEMICALS, AND AS SUCCESSOR-IN-INTEREST TO UNITED PACIFIC CORPORATION, ASHLAND, LLC, SUCCESSOR-IN-INTEREST TO AND F/K/A ASHLAND, INC., SAVOGRAN COMPANY, HOUGHTON CHEMICAL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, HOP ENERGY, LLC, METRO OIL AND | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | |

CHEMICAL CORPORATION,                 :
SCHRADER-BRIDGEPORT                   :
INTERNATIONAL, INC.                   :
                                      :
                                      :
                                      :
APPEAL OF: PHYLLIS DICKERSON,         :
INDIVIDUALLY AND AS                   :
ADMINISTRATRIX OF THE ESTATE OF
ROBERT DICKERSON

Appeal from the Order Entered September 13, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 190703709

BEFORE: OLSON, J., DUBOW, J., and BECK, J.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 8, 2025**

Appellant, Phyllis Dickerson, individually and as administratrix of the estate of Robert Dickerson, appeals from the order entered on September 13, 2024, which granted the motion to dismiss on the basis of *forum non conveniens*, filed on behalf of, *inter alia*, Defendants Exxon Mobil Corporation, Atlantic Richfield Company ("ARCO"), Henkel US Operations Corporation ("Henkel"), CRC Industries, Inc. ("CRC"), and BP Products, North America, Inc. ("BP") (hereinafter, collectively, "the Defendants"). We affirm.

The trial court ably summarized the underlying facts of this appeal:

> Plaintiffs Robert Dickerson and Phyllis Dickerson [were married and, at all times, were] residents of North Carolina[. They] brought this action in the Philadelphia Court of Common Pleas on July 29, 2019, alleging that Mr. Dickerson developed Myelodysplastic Syndrome ("MSD") as the result of occupational exposure to benzene containing products during the course of his employment in North Carolina in the

- 2 -

years from 1955 to 2006.[1] Plaintiffs, at all times, were residents of North Carolina and Mr. Dickerson never lived or worked in Pennsylvania. Defendants are companies that manufactured, sold, marketed, and/or distributed products containing benzene that [Mr. Dickerson] allegedly worked with and was exposed to in the workplace. Such workplace exposure occurred in North Carolina.

Plaintiffs' original Complaint, filed on July 29, 2019, set forth claims of negligence and gross negligence, breach of warranty, strict liability, battery, fraud, and loss of consortium against [17] defendants, many of which contested [the trial court's] jurisdiction. Because of these jurisdictional objections, this matter was delayed during the pendency of the litigation in [**Mallory v. Norfolk Southern Railway Co.**, 266 A.3d 542 (Pa. 2021), *vacated and remanded*, 600 U.S. 122 (2023).] Of the original [17] defendants, only three were Pennsylvania corporations — CRC, Sunoco, and United States Steel Corporation. As of [September 13, 2024,] CRC [was] the only remaining Pennsylvania corporate [d]efendant.

[In 2023, the Defendants filed motions to dismiss on the basis of *forum non conveniens*, contending that the trial court should dismiss Plaintiffs' complaint and grant Plaintiffs leave to refile their case in North Carolina. On August 8, 2024, the trial court held oral argument on the Defendants' motions.[2]] At [argument], the [trial court] was informed that there are now [four] remaining Defendants: Exxon Mobil, Henkel, ARCO, and CRC. Plaintiffs allege[d] occupational exposure to benzene contained in Defendant CRC's Clean-R-Carb carburetor cleaner and Henkle's Permatex Gasket Adhesive. Defendants Exxon Mobil and ARCO are alleged to have supplied petroleum components containing benzene that were used in the manufacture of CRC's carburetor cleaner and Henkle's adhesive.

---

[1] Mr. Dickerson sadly passed away on June 10, 2023, from MSD.

[2] The trial court initially denied the Defendants' motions. However, the trial court granted the Defendants' motion for reconsideration and then reexamined the issue.

Defendants contest that Mr. Dickerson was [n]ever exposed to their products during the course of his employment and Defendant CRC denies that its carburetor cleaner contains benzene and/or that it caused [Mr. Dickerson's] illness. Plaintiff, Mr. Dickerson, passed away on June 10, 2023 of MSD. He is survived by his wife Phyllis Dickerson, who is Plaintiff individually and as Administratrix of her late husband's estate.

Trial Court Opinion, 9/13/24, at 2-4.

During the August 8, 2024 argument on the Defendants' motion to dismiss on the basis of *forum non conveniens*, the trial court concluded:

it doesn't appear that trial is going to be scheduled any time soon. So . . . we're back where we started. . . . [T]here are still preliminary objections outstanding . . . about personal jurisdiction. . . . So the plaintiff is going to wait another five years on this. Because it's going to go back. [Defendants are] not giving up the fact that they believe that Justice Alito agreed with them that the plaintiff has no business filing lawsuits in – or Pennsylvania has no business asserting jurisdiction over companies that aren't [their] province to have jurisdiction over.

N.T. Hearing, 8/8/24, at 20 and 43-45. Further, during argument, the Defendants asserted: "in 2021[,] when this was first filed, all [Defendants] agreed not to contest specific jurisdiction in North Carolina. There's no jurisdictional problems in North Carolina." *Id.* at 47-48.

On September 13, 2024, the trial court entered its order, which granted the Defendants' motion to dismiss on the basis of *forum non conveniens*. Within the trial court's accompanying opinion, the trial court concluded: 1) trial in North Carolina would provide easier access to the sources of proof than trial in Pennsylvania; 2) compelling process for unwilling witnesses would be

easier in North Carolina than in Pennsylvania; 3) "[Mr. Dickerson's] general working conditions are relevant and that a jury view of the workspace, the ventilation, and whatever safety measures are in place, or not, would be a reasonable defense of this case and that would be only possible in North Carolina;" 4) "a trial in North Carolina would not only provide access to relevant and material witnesses, it could be far more expeditious and conceivably less costly;" 5) "there has been no evidence that a trial in Pennsylvania could occur any earlier than in North Carolina;" 6) "North Carolina courts and juries would have more of an interest in this case than Pennsylvania [since] . . . Plaintiffs were residents of North Carolina, all of Mr. Dickerson's alleged exposure was in North Carolina, and [] all of the witnesses with personal knowledge of his duties, work environment, and alleged exposure as well as all of his treating physicians, are in North Carolina;" and, 7) "the vast majority of [Mr. Dickerson's] workplace exposure to benzene was alleged to have occurred from products and chemicals with no shown manufacturing connection to Pennsylvania." Trial Court Opinion, 9/13/24, at 1-17.

Appellant filed a timely notice of appeal from the trial court's final order and now raises two claims to this Court:

> 1. Did the [trial] court abuse its discretion by dismissing this case on the basis of *forum non conveniens* when the case had been pending for [five] years, discovery was complete, a trial date was imminent, and the [trial] court expended a great deal of resources on the matter?

2. Did the [trial] court abuse its discretion by granting a motion to dismiss to North Carolina under *forum non conveniens* where two cases in this Court, [***Wright v. Aventis Pasteur, Inc.***, 905 A.2d 544 (Pa. Super. 2006) and ***Hunter v. Shire US, Inc.***, 992 A.2d 891 (Pa. Super. 2010)], govern this appeal, where the public factors weigh strongly in favor of retaining this case in Pennsylvania and Philadelphia County because, *inter alia*, the crux of the litigation pertains to decisions by Pennsylvania manufacturers to use benzene in their products, more Defendants/Appellees are located here than in any other State, all Defendants/Appellees are alleged to conduct business here, more essential witnesses are located in or near Philadelphia, and where the private factors do not strongly weigh in favor of dismissal?

Appellant's Brief at 3.

We have reviewed the briefs of the parties, the relevant law, the certified record, and the opinion of the able trial court judge, the Honorable Linda Carpenter. We conclude that Appellant is not entitled to relief in this case, for the reasons expressed in Judge Carpenter's well-reasoned September 13, 2024 opinion.[3] Therefore, we affirm on the basis of Judge Carpenter's able

_____

[3] We note:

> **Orders on motions to dismiss under the doctrine of *forum non conveniens* are reviewed for an abuse of discretion**. This standard applies even where jurisdictional requirements are met. Moreover, **if there is any basis for the trial court's decision, the decision must stand**.
>
> An abuse of discretion occurs if, *inter alia*, there was an error of law or the judgment was manifestly unreasonable. When reviewing for errors of law, the appellate standard of review is *de novo* and the scope of review is plenary.

***Hovatter v. CSX Transp., Inc.***, 193 A.3d 420, 424 (Pa. Super. 2018) (emphasis added).

opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Carpenter's September 13, 2024 opinion.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/8/2025

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENSYLVANIA
## CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| **DICKERSON, et al.** | : | **CASE NO. 190703709** |
| | : | |
| **v.** | : | **CONTROL NO. 24064169** |
| | : | |
| **UNITED STATES STEEL, et al.** | : | |

## ORDER

**AND NOW**, this 13ᵗʰ day of September, 2024, upon consideration of Defendant CRC Industries, Inc.'s Motion for Reconsideration of the Court's April 24, 2024 Order denying Defendants Ashland LLC, CRC Industries, Inc., Union Oil Company of California, and Univar Solutions USA Inc.'s Motion to Dismiss based on *forum non conveniens*, and the response thereto, it is hereby **ORDERED** that the Motion for Reconsideration is **GRANTED**, and provided that the remaining Defendants honor their agreement not to contest specific jurisdiction in North Carolina, the Motion to Dismiss based on *forum non conveniens* is **GRANTED** and Plaintiffs' action is **DISMISSED** without prejudice to Plaintiffs to refile in North Carolina within one hundred and twenty (120) days.

BY THE COURT:

**CARPENTER, J.**

ORDOP-Dickerson Etal Vs United States Steel Corporation [FJB]

19070370900610

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENSYLVANIA
## CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| DICKERSON, et al. | : | **CASE NO. 190703709** |
| | : | |
| v. | : | **CONTROL NO. 24064169** |
| | : | |
| UNITED STATES STEEL, et al. | : | |

## OPINION

CARPENTER, J.                                                        SEPTEMBER 13, 2024

Before the Court is Defendants' Motion for Reconsideration of the Court's April 24, 2024 Order denying Defendants' Motion to Dismiss based on *forum non conveniens,* pursuant to 42 Pa. C.S.A. § 5322(e).[1] Upon careful consideration of the arguments presented by the parties, this Court finds that Defendants have presented sufficient evidence that North Carolina is a more appropriate forum in this case and thus, has **GRANTED** the Motion to Dismiss for refiling within one hundred and twenty (120) days in North Carolina.[2]

---

[1] Defendants' Motion to Dismiss for *forum non conveniens* was originally filed March 8, 2021 and Rule to Show Cause was held April 19, 2021. Because of the uncertainty of which Defendants would actually be part of any Pennsylvania trial, this Court determined that the Motion was not ripe for review until *after* the jurisdictional challenges were resolved. Following the Supreme Court of the United States' decision in *Mallory v. Norfolk S. Ry. Co.*, 266 A.3d 542, 546 (Pa. 2021), *vacated and remanded,* 600 U.S. 122 (2023), this Court issued an Order on April 24, 2024, denying Defendants Asland LLC, CRC Industries, Inc., Union Oil Company of California, and Univar Solutions USA Inc.'s Motion to Dismiss based on *forum non conveniens.* On June 20, 2024, Defendant CRC filed a Motion for Reconsideration of that Order.

[2] This motion is joined by Defendants Exxon Mobil Corporation (Exxon Mobil), Atlantic Richfield Company (ARCO), Henkel US Operations Corporation (incorrectly sued as Henkel Corporation, Individually and as Successor-in-Interest to Loctite Corporation), (Henkel), and BP Products, North America, Inc. (BP). Atlantic Richfield Company ("ARCO") and BP Products North America, Inc. were sued as Successors-in-Interest to Sinclair Oil.

2

## FACTS OF THE CASE

Plaintiffs Robert Dickerson and Phyllis Dickerson (h/w), residents of North Carolina, brought this action in the Philadelphia Court of Common Pleas on July 29, 2019, alleging that Mr. Dickerson developed Myelodysplastic Syndrome ("MSD") as the result of occupational exposure to benzene containing products during the course of his employment in North Carolina in the years from 1955 to 2006. Plaintiffs, at all times, were residents of North Carolina and Mr. Dickerson never lived or worked in Pennsylvania. Defendants are companies that manufactured, sold, marketed, and/or distributed products containing benzene that Plaintiff allegedly worked with and was exposed to in the workplace. Such workplace exposure occurred in North Carolina.

Plaintiffs' original Complaint, filed on July 29, 2019, set forth claims of negligence and gross negligence, breach of warranty, strict liability, battery, fraud, and loss of consortium against seventeen (17) Defendants, many of which contested this Court's jurisdiction.[3] Because of these jurisdictional objections, this matter was delayed during the pendency of the litigation in *Mallory v. Norfolk S. Ry. Co.*, 266 A.3d 542, 546 (Pa. 2021), *vacated and remanded,* 600 U.S. 122 (2023). Of the original seventeen Defendants, only three were Pennsylvania corporations – CRC, Sunoco, and United States Steel Corporation. As of the date of the instant Motion for Reconsideration, CRC is the only remaining Pennsylvania corporate Defendant.

After vacating the April 24, 2024 Order, this Court conducted a Rule hearing on August 8, 2024 on the Motion for Reconsideration. At the hearing, the Court was informed that there are

---

[3] The litigation has involved several Amended Complaints. At present, Plaintiffs' claims are set forth in the Fourth Amended Complaint, filed July 3, 2024, which alleges negligence and gross negligence, breach of warranty, strict liability, battery and fraud, wrongful death, and the Survival Act.

3

now four (4) remaining Defendants: Exxon Mobil, Henkel, ARCO, and CRC. Plaintiffs allege occupational exposure to benzene contained in Defendant CRC's Clean-R-Carb carburetor cleaner and Henkle's Permatex Gasket Adhesive. Defendants Exxon Mobil and ARCO are alleged to have supplied petroleum components containing benzene that were used in the manufacture of CRC's carburetor cleaner and Henkle's adhesive.

Defendants contest that Mr. Dickerson was ever exposed to their products during the course of his employment and Defendant CRC denies that its carburetor cleaner contains benzene and/or that it caused Plaintiff's illness. Plaintiff, Mr. Dickerson, passed away on June 10, 2023 of MSD. He is survived by his wife Phyllis Dickerson, who is Plaintiff individually and as Administratrix of her late husband's estate.

## DISCUSSION

The doctrine of *forum non conveniens*, as codified at 42 Pa.C.S. §5322(e), permits a court to dismiss a case when the court finds that "in the interest of substantial justice the matter should be heard in another forum." *Plum v. Tampax,* 160 A.2d 549 (Pa. 1960). *See also* 42 Pa.C.S. 5322(e); *Wright v. Consol. Rail Corp.,* 215 A.3d 982, 990-91 (Pa.Super. 2019). Two factors are considered when determining the request to dismiss: 1) a plaintiff's decision about where to institute the action cannot be disturbed except for weighty reasons; and 2) an alternate forum must exist. *Plum,* 160 A.2d at 553. In evaluating whether "weighty" reasons exist, the Pennsylvania appellate courts have used the standard set forth in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947) (*"Gulf Oil"*), which evaluated "private" and "public" factors. *Plum,* 160 A.2d at 561. Because the parties concede that North Carolina is an alternate forum, this Court focuses on the "weighty" reasons that North Carolina would be a more appropriate forum for the trial than

4

Pennsylvania. *Gulf Oil*'s statement of private factors includes the relative ease of access to sources of proof, availability of compulsory process for attendance for unwilling witnesses, cost of obtaining attendance of willing witnesses, possibility of view of premises (if view would be appropriate to the action), and all other practical problems that make <u>trial</u> of a case easy, expeditions, and inexpensive. *Id.* (emphasis added). *Gulf Oil*'s statement of public factors includes a consideration of relative administrative difficulties at trial, a concern that jurors should evaluate matters of concern to their community, and the appropriateness of the at-issue forum (Pennsylvania) for the particular questions involved, including conflict of laws. *Id.* (*citing Gulf Oil*, 330 U.S. at 508-09).

This Court interprets *Gulf Oil*'s list of factors, focused on sources of proof at trial and other weighty considerations for the trial of the action, to be considered in totality, with no one factor being determinative. This Court's analysis follows.

## PRIVATE FACTORS

### 1. Would trial in North Carolina provide easier access to the sources of proof than Pennsylvania?

In order to answer the question about access to proof for trial, this Court must first evaluate what claims will be likely and what evidence will reasonably be needed to prove, or disprove, the relevant claims or defenses. In this case, the parties have cited to a litany of potential witnesses and documents that they assert are vital to the presentation of evidence at trial. The parties disagree as to whether access to the evidence is more easily obtained in North Carolina or Pennsylvania. After a review of the purported evidence for each party, this Court determines that many of the cited sources of evidence are not material to prove any claim or defense at trial. In reaching this conclusion, this Court begins with the premise that, at its heart,

5

this case concerns the alleged occupational/industrial exposure to benzene which Mr. Dickerson claims he worked with on a daily basis in North Carolina from 1955 through 2006, a period of over 50 years. During that time, Mr. Dickerson worked for two employers – a Sinclair gas station from 1955-1959 and Weyerhaeuser from July, 1965-2006. Because Mr. Dickerson's alleged exposure to the remaining Defendants' products was through his work, warnings and labeling of products to a retail consumer are not as central to his case.

Thus, evidence as to Plaintiff's exposure in the workplace is the primary factual issue for trial and evidence thereof will come from the testimony of Mr. Dickerson, deceased, via video deposition and Mrs. Dickerson. Additional trial testimony would come from Plaintiff's supervisor and co-workers and possibly his treating physicians in addition to experts. While it is unlikely that Plaintiffs or Defendants will bring all of the witnesses (co-workers and supervisors) they have listed to testify, it is very likely that Defendants will seek the testimony of Plaintiff's former supervisor at Weyerhaeuser, Mr. Stephen Lawson, who can testify with specificity as to which products Plaintiff was exposed to, and how the products were used, in addition to testifying about his general working conditions. Defendants argue that Mr. Lawson's testimony is critical to CRC's defense and CRC would be severely prejudiced if they were not able to call him at trial, as Mr. Lawson's testimony goes directly to the threshold issue of whether Plaintiff was exposed to CRC's carburetor cleaner during his employment at Weyerhaeuser.[4] Mr. Lawson has testified that he would not voluntarily come to Pennsylvania for trial.

_____

[4] Mr. Dickerson testified that he used CRC carburetor cleaner forty-five minutes to an hour each day. The testimony of Mr. Dickerson's supervisor, Mr. Lawson, directly contradicts that testimony, making him a material witness for the defense.

> ...Mr. Lawson testified that he never observed any operators using carburetor cleaners and that there was no reason for an operator to use carburetor cleaners at Weyerhaeuser. Additionally, Mr. Dickerson claimed that he used CRC carburetor cleaners forty-five minutes to an hour each day. Mr. Lawson confirmed that operators occasionally used

6

As to the relative ease of access to these sources of proof at trial, based on the evidence before it, this Court finds that trial in North Carolina or Pennsylvania would have no impact on the testimony of Plaintiff Mr. Dickerson because that will be brought via video tape. Evidence as to products, their formulations, and how they were marketed and advertised, in addition to evidence as to exposure and causation will likely be presented by expert testimony. The testimony of Plaintiff's employers, supervisor, and co-workers would be easier in North Carolina and would be more difficult in Pennsylvania because they cannot be compelled to testify if the case remains in Pennsylvania.

In addition to the above testimony and evidence, the parties will be presenting their proofs regarding Plaintiff's workplace conditions, including dimensions of the space, industry standards as to ventilation and proximity, and safety measures, or lack thereof, of the premises along with the evidence about which products Plaintiff used or was exposed to in the workplace. Much of this will likely be presented by experts, however, there could also be evidence presented by Plaintiff's employer and co-workers on these issues, which would be easier in North Carolina.

Plaintiffs argue that documentary evidence and corporate witnesses of Defendant CRC are located in Pennsylvania and these go directly to pivotal issues regarding CRCs formulation, manufacture, and marketing of their products as well as internal decisions regarding the safety and warnings. This Court has taken these arguments into consideration and concludes that, while this evidence is relevant, the marketing materials are not the central focus of this case given that the relevant exposure to benzene was in the industrial, not consumer, arena. Moreover, most, if

---

aerosol products, like WD-40, on valves, but he described that as a rare occurrence. He further testified that he would be surprised to hear an operator claim to have used aerosol cleaners to the extent claimed by Mr. Dickerson. *See* Defendants Ashland LLC, CRC Industries, Inc., Union Oil Company of California, and Univar Solutions USA Inc.' s March 8, 2021 Motion to Dismiss at Paragraph 9.

not all, of the CRC testimony regarding these issues is likely to be submitted through expert testimony and already videotaped corporate depositions of the designated CRC personnel. Further, it is unclear whether any of the relevant CRC designees are still located in Pennsylvania and, at the hearing of this matter in August 2024, Plaintiffs pointed to no particular CRC witness that was located in Pennsylvania and was also material to the trial. In any event, if a designee were required at trial, access to that testimony would be no more difficult whether trial is in Pennsylvania or North Carolina.

Again, the issue in this case is whether Plaintiff was ever exposed to Defendants' products, the extent of that exposure, and, if proved, whether that exposure caused his injuries. The bulk of the testimonial evidence regarding Plaintiff's exposure and daily activities is likely to be presented though the testimony of Plaintiff as well as Plaintiff's employers, supervisors, and coworkers. This would be much easier if the trial were in North Carolina.

A final probable source of proof relevant to this case is evidence regarding damages and Plaintiff's medical treatment. Defendants argue that Plaintiff's four (4) treating physicians are important to their case and they may be called to testify if the trial is in North Carolina. While one or more of Plaintiff's treating physicians may be called at trial, especially if the case is tried in North Carolina, this Court finds it more likely that most of the medical and causation testimony will be submitted and refuted through experts, who will rely on the various medical records that have already been produced in this case. Thus, this Court does not find that there is any easier access to the medical evidence whether trial is in North Carolina or in Pennsylvania and this factor is not part of the totality for the Court.

## 2. Is there availability of compulsory process for unwilling witnesses and the cost of attendance of the willing witnesses to a Pennsylvania trial?

Defendants argue that witnesses critical to the defense would be available to testify in North Carolina, but not be available for trial in Pennsylvania, and have included Plaintiffs' list of witnesses that have knowledge of Mr. Dickerson's alleged work exposure. Of these witnesses, Defendants argue Plaintiff's supervisor, Mr. Lawson, and co-worker, Jerry Stines – both with actual knowledge of Plaintiff's exposure – will likely be called at trial and their testimony is critical to their defense. Mr. Lawson's testimony goes directly to the issue of Plaintiff's exposure and directly contradicts Plaintiff's testimony. Mr. Lawson has testified that he is not willing to appear in Pennsylvania. Plaintiff's co-workers have not indicated that they would voluntarily appear at trial in Pennsylvania. This Court concludes that the defense has a right to call material live witness at trial and that compelling this material testimony is easier in North Carolina than in Pennsylvania. Standing alone, this factor is not enough to transfer, but it is included in the Court's totality analysis.

## 3. Is there a possibility of view of the premises, if view would be appropriate to this action?

Defendants maintain that a jury's ability to view the facilities would significantly enhance the jury's understanding of Plaintiff's working conditions, through first-hand observation of the dimensions of the workspaces, the ventilation, and the safety measures in place. A jury view would not be possible in Pennsylvnia.

Plaintiffs assert that a jury's view is an unnecessary and irrelevant consideration because Defendants have been involved in numerous benzene exposure cases and have never had a judge or jury view the worksite. In weighing this factor, this Court determines whether the possibility

9

of a jury view of the premises would be easier if the trial were in North Carolina rather than Pennsylvania and whether that carries significant weight. This Court finds that Plaintiff's general working conditions are relevant and that a jury view of the workspace, the ventilation, and whatever safety measures are in place, or not, would be a reasonable defense of this case and that would be only possible in North Carolina. While a jury view is unlikely, and, standing alone, would not support dismissal, it is a factor that must be included in a totality of circumstances analysis.

### 4. What other practical problems make trial easy, expeditious, and inexpensive such that North Carolina or Pennsylvania is a more appropriate forum?

Plaintiffs argue that to dismiss this case and "start over" in North Carolina would not eliminate the need for Philadelphia and the Pennsylvania courts to be actively involved in the litigation. A North Carolina court would require the assistance of Pennsylvania and other courts to secure documents and testimony and, if Plaintiffs are required to execute a judgment against Defendant CRC, the participation of the Pennsylvania court would be necessary to enforce the judgment; thus, moving this case to North Carolina would result in an even trade of judicial burdens. This Court rejects Plaintiffs' argument that any material evidence has been shown to exist in Pennsylvania. All documents, manufacturing information, and testimony have been produced and Plaintiffs have pointed to no specific evidence that is located in Pennsylvania that would need subpoena to North Carolina. As to execution of judgment concerns, all seventeen original Defendants consented to jurisdiction in North Carolina, including the four that remain. Moreover, three of the four remaining Defendants are foreign corporations. Simply put, there is no concrete evidence before this Court that the costs of obtaining witnesses or executing judgment would be greater in North Carolina or Pennsylvania. Rather, a trial in North Carolina

would not only provide access to relevant and material witnesses, it could be far more expeditious and conceivably less costly. As far as the expeditiousness of trial, there has been no evidence that a trial in Pennsylvania could occur any earlier than in North Carolina given that trial in this case is most likely to be scheduled in late 2025 or early 2026.

## PUBLIC FACTORS

1. **What are the relative administrative difficulties of trial in Pennsylvania versus North Carolina?**

Defendants provide statistical evidence that Philadelphia courts are busy and that the Philadelphia court docket is significantly busier than that of Washington County, North Carolina. Plaintiffs argue that there is no evidence of the Philadelphia court being unable to provide a more expedient trial and further aver that the Superior Court has greatly minimized the importance of this factor. This Court rejects any consideration that there is any particular administrative difficulty in Philadelphia because of congestion or other such consideration. However, given the jurisdictional challenges in this case and its current case management schedule, trial in Pennsylvania appears no more expeditious than trial in North Carolina.

2. **Are there trial issues that are of concern to Pennsylvania jurors and the Pennsylvania community?**

Defendants argue that a jury of Pennsylvania residents would have no relationship to the key aspects of this case. Plaintiffs were residents of North Carolina, all of Mr. Dickerson's alleged exposure was in North Carolina, and that all of the witnesses with personal knowledge of his duties, work environment, and alleged exposure as well as all of his treating physicians, are in North Carolina. A North Carolina jury, however, would have a significant interest in the

11

litigation; as such, it would be unfair and inconvenient to ask the citizens of Philadelphia to act as jurors when this case has nothing to do with their community.

Plaintiffs argue that Pennsylvania and Philadelphia County courts and jurors have the greater interest in this case because Defendant CRC is a Pennsylvania corporation that manufactured its carburetor cleaner in Pennsylvania and placed that product into the stream of commerce. Pennsylvania jurors and Pennsylvania courts have an interest in the manner in which Defendants conduct business. *Citing Wright v. Aventis Pasteur, Inc.*, 905 A.2d 544 (Pa. Super. 2006).

This Court acknowledges that Pennsylvania, and its jurors, would have some interest in this case because CRC is a Pennsylvania corporation. However, three of the four remaining Defendants have no real connection with manufacturing any relevant products in Pennsylvania and all three contest jurisdiction. Moreover, the evidence is equivocal as to whether Plaintiff was ever actually exposed to a CRC product that was manufactured in Pennsylvania.

In taking this factor into consideration in the totality analysis of whether North Carolina is a more appropriate forum, this Court concludes that, because it is the alleged prolonged occupational exposure to products provided in the workplace in North Carolina that is the linchpin issue for trial, North Carolina courts and juries would have more of an interest in this case than Pennsylvania.

### 3. Is Pennsylvania an appropriate forum for the particular questions involved, including conflict of laws?

Defendants argue that Pennsylvania has little relationship to this case and that all of the relevant evidence is in North Carolina. Defendants also assert that there are conflict of

12

laws issues in this case.[5]

Plaintiffs argue that Defendant CRC is a Pennsylvania corporation, headquartered in Pennsylvania, and if there is a conflict, Pennsylvania law should apply. *Citing Wright v. Aventis Pasteur, Inc.,* 905 A.2d 544, 548 (Pa. Super. 2006). This Court acknowledges that there is no broad-brush answer to determine which law would apply to any particular issue in this case. While Pennsylvania certainly has an interest in its products liability laws applying to corporations that are residents of the Commonwealth, Pennsylvania has no interest in having its products liability laws apply to the other non-resident foreign corporations that allegedly exposed Plaintiff to benzene. Moreover, Pennsylvania has no interest in legal issues related to injuries to a non-resident resulting from workplace exposures primarily from foreign corporations that occurred in North Carolina and not Pennsylvania. *Jessop v. ACF Indus., LLC,* 859 A.2d 801, 804 (Pa. Super. 2004); *Wright v. Consol. Rail Corp.,* 215 A.3d 982, 996 (Pa. Super. 2019) (citing *Engstrom v. Bayer Corp.,* 855 A.2d 52 (Pa. Super. 2004) (imposing jury duty and court costs on communities with no relation to the plaintiff's claim weighs in favor of transferring a case)

This Court recognizes that the instant matter differs in some respect from *Wright* because Plaintiffs are alleging that the injuries are related to CRC's conduct in Pennsylvania, given that Defendant CRC appears to have manufactured products in Pennsylvania. However, the evidence

---

[5] Pennsylvania recognizes a tort claim for breach of the implied warranty of merchantability, while in North Carolina such claim sounds in contract and not tort. Pennsylvania recognizes strict products liability, while North Carolina does not. Pennsylvania follows a comparative negligence approach, while North Carolina applies contributory negligence. *See Sikkelee v. Precision Airmotive, Corp.,* No. 4:07-cv-886, 2012 WL 12862562, at *3 and *2 (M.D. Pa. Mar. 13, 2012)(concluding that "[u]ndeniably, the laws of [North Carolina and Pennsylvania] conflict in a material and potentially dispositive way"). The states' respective approaches to damages also differ. Punitive damages are limited in North Carolina. N.C.G.S. § 1D–25 caps punitive damages recoverable in civil actions to $250,000 or three-times actual damages, whichever is greater. *See Rhyne v. K-Mart Corp.,* 358 N.C. 160, 163–64, 594 S.E.2d 1, 5 (2004).

13

of this alleged exposure is equivocal, particularly because Mr. Dickerson's employer, where the exposure would have occurred, refutes that Mr. Dickerson ever worked near a CRC product. Moreover, the vast majority of Plaintiff's workplace exposure to benzene was alleged to have occurred from products and chemicals with no shown manufacturing connection to Pennsylvania. *See Jessop v. ACF Indus., LLC,* 859 A.2d 801 (Pa. Super. 2004).

Because this case is about Plaintiff's alleged occupational exposure to benzene and the events giving rise to this action arose in North Carolina, to residents of North Carolina, and all of the evidence as to that exposure is in North Carolina, this Court finds that it would be more appropriate for the trial in this case to be in North Carolina. In addition, there are conflict of laws considerations. A trial court does not need to decide which law applies in deciding a Motion to Dismiss for *forum non conveniens,* only that there is a conflict of laws issue and that the conflict of laws analysis is burdensome. *See Bochetto v. Dimeling, Schreiber & Park,* 151 A.3d 1072, 1086 (Pa. Super. 2016) (*citing Engstrom v. Bayer Corp.,* 855 A.2d 52, 57 (Pa. Super. 2004) (affirming trial court's dismissal where dismissal was based in part on the need to engage in a conflict of laws analysis).

## CONCLUSION

After careful consideration of the private and public factors in this case, this Court finds that the private and public factors weigh heavily for transfer to North Carolina. This is a case of alleged workplace exposure to benzene that continued over a fifty year time period in North Carolina. Plaintiff was a resident of North Carolina and never worked or lived in Pennsylvnia. It is not disputed that all of the sources of proof, including Plaintiff's treating physicians, co-

14

workers, and supervisors, who can testify as to the issue of exposure and to his injuries, are in North Carolina.

Transfer of this case would eliminate the jurisdictional objections of Defendants ARCO, Exxon Mobil, and Henkle, which have been ongoing since this case was filed, thus making North Carolina a more expeditious and less costly forum. While a Pennsylvania jury may have some interest in this case, the connections to Pennsylvnia are tenuous compared to those with North Carolina. A North Carolina jury would have a much greater interest in this case, as it involves an injury which occurred over a period of fifty years in North Carolina affecting citizens of North Carolina. Pennsylvania is not an appropriate forum to determine the issues concerning whether Mr. Dickerson was exposed to Defendants' products in North Carolina or to what extent. Moreover, this case, with four remaining Defendants that all allegedly manufactured products that contain benzene, raises multiple conflict of laws issues.

This Court acknowledges that both Plaintiffs and Defendants have made meritorious arguments. The gist of Plaintiffs' argument is that Defendants' Motion to Dismiss is an attempt to delay Plaintiffs' "day in court" by moving the case to a venue where they perceive the jury pool to be more strategically advantageous. They aver that transferring this case would result in a "manifest injustice" to Plaintiffs, as this case has been litigated for five years. Plaintiffs rely *on Ficarra v. Consol. Rail Corp.*, 242 A.3d 323, 338 (Pa. Super. 2020). The *Ficarra* Court ruled in favor of the denial of the railroad Defendants' *forum non conveniens* motion because the "bulk of discovery" had already been completed and thus, the case was trial ready and it would be a waste of the Philadelphia Court's resources, as well as the resources of the parties, to dismiss the case. The Court reasoned that "it would be inequitable to dismiss the matter when it is ready for trial in

15

order for it to begin in another jurisdiction" and that "even if the case is trial ready it will not be tried as expeditiously when it begins anew in another jurisdiction." *Id.*

While this Court has taken into consideration the delay occasioned in this case, *Ficarra* is inapposite to the procedure in this case because the case at bar **is not trial ready** and the defense made its request to transfer well before the case would be considered "trial ready." While most of the discovery with regard to the CRC product has been completed, under current case management deadlines, trial will not be scheduled until after June 2025. Given the current pre-trial notices in Philadelphia, a trial could be scheduled up to a year after the pretrial conference, so perhaps this case will not be scheduled for trial until the first half of 2026. Further, because three Defendants continue to contest the appropriateness of jurisdiction in Pennsylvania, this matter is still at the preliminary objection stage with regard to those Defendants. Consequently, it does not appear that these Defendants have engaged in discovery because of the existing jurisdictional challenges.

Plaintiffs further argue that Defendant CRC is a Pennsylvania corporation, headquartered in Pennsylvania, and that the evidence and witnesses as to the formulation and manufacture of their carburetor cleaner was in Pennsylvania. This Court has included this factor in its analysis of the totality of circumstances and this factor, standing alone, would lean in favor of trial in Pennsylvania. However, no factor stands alone and must be weighed with all the other factors set forth in *Plum*. Plaintiffs' claims of injury at trial do not result solely from Defendant CRC's carburetor cleaner, but also from the Henkel adhesive, which has no connection to Pennsylvania. Further, Defendant CRC has evidence that Plaintiff did not work in an area in which he would have been exposed to the CRC product that was manufactured in Pennsylvania. To the extent that proof of the manufacture of the carburetor cleaner is necessary at trial, no sources of proof

16

have been shown to be obtained in Pennsylvania, given that most of this testimony will be provided through experts who will rely on the documentary evidence already produced or other evidence that is as easily obtained in North Carolina as in Pennsylvania.

This Court has evaluated both parties' submissions and has made findings and conclusions that weighty reasons exist such that North Carolina is a more appropriate forum than Pennsylvania.

BY THE COURT:

_____
CARPENTER, J.